[No. C019760. Third Dist. Aug. 29, 1996.]

GWENDOLYN ERIKSON, Plaintiff and Respondent, v.
BARRY E. WEINER et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

**COUNSEL**

Colton, Roesser & Greer, Roland C. Colton and C. Keith Greer for Defendants and Appellants.

Belden, Abbey, Weitzenerg & Kelly, Wayne R. Wolski and Dennis J. Byrne for Plaintiff and Respondent.

**OPINION**

**BLEASE, Acting P. J.**—This is an appeal from a judgment in favor of plaintiff, Gwendolyn Erikson, after a jury trial in a medical malpractice action.

Defendant, Dr. Barry E. Weiner, contends the trial court erred in denying his motion for a new trial predicated on claims of juror misconduct. In the published portion of the opinion[1] we decide that the provision of Code of Civil Procedure section 659a[2] that the trial court may extend the period within which to file an affidavit in support of a new trial "not exceeding 20 days" is mandatory. Accordingly, we will not consider the defendant's affidavits filed after the expiration of that period. Considering only the affidavits timely filed we will affirm the trial court's order denying a new trial.

In the unpublished portion of the opinion we reject the defendant's argument that there is not substantial evidence to support the implied finding that plaintiff, Gwendolyn Erikson, is totally and permanently disabled by reason of defendant's negligence.

We will affirm the judgment and the order denying a new trial.

FACTS AND PROCEDURAL BACKGROUND

In March 1991 Erikson was working in a grocery store stocking milk cartons. As she pulled a four-gallon crate off the top of a six-foot stack she slipped on wet milk. She let go of the crate and twisted to break her fall; the crate landed on her left foot, resulting in a significant injury.

About four months later Erikson was referred by her treating podiatrist, Dr. Smith, to Dr. Weiner for consultation concerning surgery on her injured foot. On July 15, 1991, Dr. Weiner performed surgery to correct a bunion; he removed, inter alia, a bone to her big toe and an inch of nerve.

Erikson now experienced pain underneath her big toe that she had not felt before the surgery. Dr. Smith advised further surgery resecting nerves in the foot to alleviate pain and evacuating the contents of the sinus tarsi. On October 2, 1991, Dr. Weiner removed the nerves, and the contents of the sinus tarsi, placing caps on the ends of two of the nerves.

The second operation did not end Erikson's foot pain; it became worse. A subsequent surgery in October 1993 to correct problems occasioned by Dr. Weiner's surgeries resulted in approximately a 30 percent reduction in the degree of foot pain. At the time of trial, in August 1994, she was able to stand on the foot, painfully, for a maximum of an hour a day.

---

[1]The Reporter of Decisions is directed to publish the opinion except for part II of the Discussion.

[2]All references to a section are to the Code of Civil Procedure unless specified otherwise.

Erikson adduced testimony of a vocational rehabilitation counselor that she did not have the ability to return to suitable gainful employment at the time of trial and that her job future was "bleak to nonexistent."

On September 9, 1994, the jury returned a special verdict answering, inter alia, that Dr. Weiner had been negligent, thereby causing injury to Erikson and damages for loss of future earnings and benefits in the sum of $708,450. The judgment on the verdict was entered on September 9, 1994.

On September 28, 1994, Dr. Weiner filed a notice of intention to move for a new trial, inter alia, on the ground of misconduct of the jury. On October 11, 1994, he filed a memorandum of points and authorities in support of the motion for a new trial. The memorandum asserts it is likely there was jury misconduct as revealed in an affidavit by defense counsel based upon his discussions with the jurors.

The affidavit avers as follows. The jurors said various things to him after the verdict which he believed showed misconduct. On September 30, 1994, he petitioned the court for the release of the names, addresses, and telephone numbers of the jurors. He was advised there could be a problem in obtaining the information because the judge who presided over the trial would be absent from the bench until October 11, 1994. For that reason Dr. Weiner needed a 20-day extension to file supporting affidavits.

On October 12, 1994, the trial court issued a minute order granting Dr. Weiner's request, received a day earlier, to extend time to file affidavits in support of the new trial motion. The order directs that time be extended to October 24, 1994.

On October 24, 1994, Dr. Weiner filed an affidavit of one of the jurors, James Lequieu, averring, in pertinent part, as follows. The jury voted separately on 10 points of possible negligence raised by plaintiff in closing argument. No single point received nine votes. Nonetheless, the jury answered yes to the special verdict question asking whether Dr. Weiner had been negligent. After the vote on the negligence question the three dissenting jurors did not participate further in the deliberations, with the exception of a single sarcastic remark.

On November 8, 1994, Dr. Weiner filed two additional affidavits. In one of them Lequieu retracted his claim of separate voting on 10 points of negligence and instead claimed there was 1 vote on whether the jurors found Dr. Weiner negligent as to any of the 10 points. In the other affidavit Juror Ralph Gonzales averred as follows. Lequieu's modified account of the

negligence ballot was correct. After the vote the dissenters "were told that we could not participate in any further deliberations." They did not participate save for the sarcastic remark. "During deliberations, some of the jurors discussed the fact that Dr. Weiner had insurance and a verdict wouldn't hurt him or affect his livelihood, whereas the plaintiff was a single mother that needed to support her son through college."

On November 9, 1994, Erikson filed an opposition to the motion for a new trial. She included in the opposition papers the affidavits of three jurors (executed on November 3, 1994) averring, in pertinent part, that there never was a vote on any of the 10 ways in which Erikson claimed Dr. Weiner was negligent.

On November 10, 1994, Dr. Weiner filed a motion to extend time to file an affidavit of Juror Gonzales. The moving papers include a supporting declaration of Dr. Weiner's counsel as follows. After receiving the juror information counsel had unsuccessfully attempted to telephone Gonzales and had only been able to reach him when he initiated contact with Dr. Weiner on or about November 4, 1994. Defense counsel had promptly arranged for Gonzales's declaration which was filed on November 8th. The record copy of Dr. Weiner's moving papers are annotated in handwritten script (presumably by the trial court) in two places with the observation that the Gonzales declaration, referred to in support of the motion, is not attached.

On November 14, 1994, the motion for a new trial came on for hearing. Before commencement of the hearing, Dr. Weiner filed a supplemental affidavit of Juror Lequieu. Lequieu avers in the affidavit: "During deliberations, some of the jurors discussed the fact that Dr. Weiner had insurance."

At the hearing a large number of topics were discussed. The topic of misconduct of the jury was reached at the end of Dr. Weiner's counsel's argument. The trial court's remarks predominantly addressed Dr. Weiner's original claim there was some impropriety in the possibility that the jury failed to agree on a single theory of negligence.

When the claim of misconduct in discussing insurance was reached, the trial court observed there was no explanation why the affidavit concerning it was not filed originally. Dr. Weiner's counsel remonstrated that he had filed a declaration explaining his inability to reach Gonzales by telephone. The trial court replied that it understood that, but that Gonzales had been reached and did file an original declaration.

The trial court then remarked: "And the supplemental declaration that talks about insurance is from Mr. Lequieu. There is no reason why he

couldn't have offered that in his first statement." Dr. Weiner's counsel began an explanation that Lequieu had initially been equivocal about the insurance topic. The trial court cut him off observing that its point was that Erikson's counsel was not apprised that juror discussion of insurance was an issue so that he could reply with counteraffidavits.

Dr. Weiner's counsel disputed this, asserting that he had served opposing counsel with Mr. Gonzales's affidavit on "the 8th" of November. Erikson's counsel interjected that the assertion was false. The trial court said it would let Erikson's counsel "speak for himself."

Erikson's counsel said he had no opportunity to consider "those other affidavits" and argued that the court should not consider affidavits submitted subsequent to the time granted in the order of extension. He said that Dr. Weiner cited no law for the proposition that raising the subject of insurance was specifically a ground for misconduct and that Dr. Weiner at some (unspecified point) had brought up the topic himself. Counsel said he would not address Gonzales's affidavit as he did not see it and had no time to consider it. His argument then moved on to other points.

When the matter was submitted the trial court explained its rulings. In pertinent part, it said that it would disregard the Lequieu affidavit as fundamentally unfair to Erikson's counsel who had no reasonable time to meet the arguments raised. However, the trial court said: "I will accept the other declarations."

In its subsequent discussion of jury misconduct the trial court explained why it found the claim of failure to agree on a theory of negligence unpersuasive. The only remark possibly relating to juror discussion of insurance is an elliptical assertion made immediately before the ruling denying the new trial motion: "The mere mention does not indicate that anyone acted on it or that it in any way interfered with their decision."[3]

---

[3]This determination is unaccountable under the reasoning given by the trial court. The motion to extend time to file the Gonzales affidavit was not filed until after the filing of Erikson's opposition papers. Erikson's counsel did receive the statutory 10 days to file a counter affidavit. The last Lequieu affidavit, which was barred by the court as unfair, was tepid and contained nothing beyond the averments of the Gonzales affidavit.

Reviewing the entire proceeding, we attribute the decision to admit all of the affidavits, except the Lequieu affidavit filed on the day of the hearing, to a misunderstanding that the two earlier affidavits were filed after the expiration of the time granted in the order of extension.

## Discussion

### I

 Dr. Weiner contends the trial court erred in failing to grant a new trial on the ground of jury misconduct.

He bases his claim on the "uncontradicted juror declaration[] that jurors considered collateral evidence of Dr. Weiner's insurance, and [that] three dissenting jurors were wrongfully forbidden from deliberating on the issues of causation, damages and apportionment of fault."[4]

At oral argument before this court, Dr. Weiner attempted to justify the second claim of misconduct, that the dissenting jurors were wrongfully forbidden from deliberating on the timely filed affidavit of Juror Lequieu. That affidavit shows no such misconduct because it says nothing about the dissenting jurors having been wrongfully forbidden to deliberate. It only avers that after the vote on the negligence question the three dissenting jurors "did not participate further in the deliberations." This does not afford an inference of wrongful conduct on the part of the majority jurors, an issue on which Dr. Weiner bears the burden of proof. (See e.g., Evid. Code, § 520.) A minority of the jurors in a civil case cannot avert a verdict on which they disagree by declining to participate in deliberations.

 The only pertinent declaration admitted in evidence, the Gonzales affidavit, was not filed until after the expiration of the 20-day extension granted by the trial court which, pursuant to section 659a, may not be exceeded.[5] This is the ground of Erikson's claim the time limit is mandatory and accordingly the affidavit may not be considered. We agree.

The trial court had discretion to extend the time for Dr. Weiner to file affidavits for a period "not exceeding 20 days" from the expiration of the initial time period specified by section 659a. That period elapsed before the Gonzales affidavit was filed and it cannot be considered in support of the motion for a new trial.

---

[4]In a footnote to the preceding assertion he notes the rule that where no counteraffidavits are adduced in new trial proceedings the averments are deemed established.

[5]Section 659a is as follows.

"Within 10 days of filing the notice [of intention to move for a new trial (Code Civ. Proc., § 659)], the moving party shall serve upon all other parties and file any affidavits intended to be used upon such motion. Such other parties shall have ten days after such service within which to serve upon the moving party and file counter-affidavits. The time herein specified may, for good cause shown by affidavit or by written stipulation of the parties, be extended by any judge for an additional period of not exceeding 20 days."

■ Preliminarily we dispose of Dr. Weiner's threshold claim, that we lack jurisdiction to consider the issue because Erikson failed to appeal from the ruling admitting the Gonzales affidavit into evidence. The matter is governed by section 906. It provides in pertinent part: "The respondent, or party in whose favor the judgment was given, may, without appealing from such judgment, request the reviewing court to and it may review [any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party] for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken. The provisions of this section do not authorize the reviewing court to review any decision or order from which an appeal might have been taken."

Erikson was not aggrieved by the judgment or the order denying the new trial motion. The ruling admitting the Gonzales affidavit into evidence had no adverse effect on the judgment. Hence, she had no right of appeal. (See § 902; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 101, pp. 120-122, and cases cited therein.)

Under section 906 Erikson has the right to the review of the intermediate ruling in the new trial proceeding, which admitted two of the late affidavits, "for the purpose of determining whether . . . the appellant was prejudiced by the error . . . upon which he relies for reversal . . . of the judgment . . . ." The error complained of, which is the failure to grant a new trial for juror misconduct, was based on the Gonzales affidavit. Whether there was such an error turns on the admissibility of the Gonzales affidavit and hence on the validity of the intermediate ruling. If there is no error there can be no prejudice arising from an error.

The case must be viewed and the prejudice measured as if the correct intermediate ruling had been made. (Cf., e.g., Civ. Code, §§ 3525, 3529.) Section 906 permits review of an intermediate ruling which is a necessary predicate to the appellant's claim of error. A successful challenge to the ruling shows the appellant suffered no prejudice. In other words, no foul, no harm.

Accordingly, the validity of the intermediate ruling admitting the affidavit may be reviewed. Dr. Weiner should not prevail on a theory that requires the support of an inadmissible affidavit.

■ That brings us to the merits of the claim the aggregate 30-day time period provided in section 659a for filing affidavits in support of a new trial motion is mandatory (also called jurisdictional). ■ "The question

whether a statutory provision is mandatory or directory tenders an issue concerning the consequences which follow upon the violation of the provision. '[T]he terms mandatory and directory . . . are only descriptive of the effect that it has been decided should be given to a statutory provision . . . .' (2A Sutherland, Statutory Construction (4th ed.) § 57.01, pp. 412-413.) The terms relate to the law of remedies. [¶] As with all issues of statutory construction, first resort must be had to a close analysis of the language of the statute." (*People* v. *Pacini* (1981) 120 Cal.App.3d 877, 888 [174 Cal.Rptr. 820].)

The first point of inquiry is whether section 659a specifies a consequence for exceeding the time limit for the filing of an affidavit in support of a new trial motion. It does so implicitly. Section 659a provides that the moving party *shall* file his affidavits within 10 days and prescribes a precise and expressly limited remedy for failure to comply. The trial court "may, for good cause shown by affidavit or by written stipulation of the parties, [extend the time to file] for an additional period *of not exceeding 20 days.*" (Italics added.) Since the 20-day period may not be exceeded the trial court has no discretion to admit affidavits submitted thereafter. That being the consequence plainly entailed by the statute, the statute must be read as mandating only that remedy.

The express limitation of section 659a is not arbitrary. It is hedged by other mandatory time frames for initiating and resolving a new trial motion. The notice of new trial must be given within 15 days of mailing the notice of entry of judgment; a late filing is void. (§ 659; e.g., *Union Collection Co.* v. *Oliver* (1912) 162 Cal. 755 [124 P. 435].) The court must resolve the motion by 60 days from the date of mailing of notice of entry of the judgment; this time period is jurisdictional. (§ 660; e.g., *Siegal* v. *Superior Court* (1968) 68 Cal.2d 97, 100-101 [65 Cal.Rptr. 311, 436 P.2d 311].) The opposing party must have at least 10 days to file counteraffidavits. (§ 659a.) When the time to file counteraffidavits has expired the respective parties are entitled to five days' notice by mail of the hearing. (§ 661.)

In light of these associated time frames, the extension of time to file affidavits beyond the aggregate 30-day period provided in section 659a will almost always encroach upon the interests of the opposing party to her allotted time for response to the new trial motion or upon the period in which the court may deliberate after submission.[6] These considerations also impel the view that the aggregate period is mandatory. Where statutory requirements are intended by the Legislature to provide protection or benefit to

---

[6]For example, in this case the late filing of the Gonzales affidavit impinged upon Erikson's time to prepare a response to the claims of misconduct of the jury pursued on this appeal. Assuming that she was simultaneously informed that the filing of Gonzales's affidavit on November 8th was valid, Erikson was entitled to 10 days to obtain counteraffidavits and 5

individuals they are likely to be construed as mandatory. (See, e.g., *People* v. *Pacini, supra*, 120 Cal.App.3d at p. 891, fn. 12.)

Dr. Weiner argues that the time limits in section 659a are not jurisdictional because *Wiley* v. *Southern Pacific Transportation Co.* (1990) 220 Cal.App.3d 177, 188 [269 Cal.Rptr. 240], says, in passing: "it has been held that the time limits for filing the affidavits in support of a new trial motion are not jurisdictional . . . . (*Clemens* v. *Regents of University of California* [(1970)] 8 Cal.App.3d 1, 21-22 [87 Cal.Rptr. 108]; *Boynton* v. *McKales* (1956) 139 Cal.App.2d 777, 782 [294 P.2d 733]; 8 Witkin, Cal. Procedure (3d ed. 1985) Attack on Judgment in Trial Court, § 66, p. 464.)"

In *Wiley* the court decided that a failure to complain in the trial court of a defect in a plaintiff's affidavits waived the claim on appeal. The opinion notes that, at the time that the matter was decided in the trial court, the 30-day aggregate period to file affidavits had not run, hence, the defect was curable. (220 Cal.App.3d at p. 188.) The only time limit in issue in *Wiley* was the initial 10-day period prescribed by section 659a. *Wiley* furnishes no support for the view that a trial court may grant an extension of time to file affidavits beyond the aggregate 30-day period. *Boynton* v. *McKales* is of the same ilk as *Wiley*.

*Wiley* cites to 8 Witkin, California Procedure (3d ed. 1985) Attack on Judgment in Trial Court, section 66, page 464, which contains the following passage: "But these [10-day] periods are not jurisdictional; time may 'for good cause shown by affidavit or by written stipulation of the parties, be extended by any judge' *for not more than 20 additional days*. (C.C.P. 659a; see *Terry* v. *Lesem* (1928) 89 C.A. 682, 686, 265 P. 523 [excess over 20 days void]; . . .)" (Italics added; bracketed material following citation of *Terry* in original.) This passage contradicts Dr. Weiner's claim.[7]

That leaves *Clemens* v. *Regents of University of California* (1970) 8 Cal.App.3d 1 [87 Cal.Rptr. 108]. In *Clemens* the court reversed an order denying a new trial in order to give retroactive effect to a change in the law (*People* v. *Hutchinson* (1969) 71 Cal.2d 342, 346-348 [78 Cal.Rptr. 196, 455 P.2d 132]), which occurred during the pendency of the appeal. The change

---

days thereafter to prepare for the hearing. This would have placed the resolution of the new trial motion proceedings beyond the mandatory 60 days from the date of mailing of notice of entry of the judgment required for resolution.

Dr. Weiner, unabashed, seeks to profit from the encroachment by arguing that the trial court, having only his "uncontradicted" declarations before it, was compelled to rule in his favor. In light of our resolution of Erikson's claim that the declarations were erroneously admitted, we need not reach this argument.

[7]Dr. Weiner omits the Witkin citation from his quotation of *Wiley*.

broadened the testimonial competency of jurors to impeach their verdict. The juror affidavits at issue contained averments which, under the new standard, could warrant a new trial for juror misconduct. However, governed by the standard at the time of the new trial proceedings, the trial court had not passed on the point.

The *Clemens* opinion decided that it was unjust to deny the party seeking a new trial the benefit of the change in the law. (*Clemens* v. *Regents of University of California, supra,* 8 Cal.App.3d at p. 20.) The court reasoned that it had the power, because of the change in the law, to provide a remedy to direct further proceedings on the new trial motion despite "the strict statutory time limits upon the various steps incident to hearing and action upon motions for a new trial [which] greatly inhibit appellate action remanding a matter to the trial court for further proceedings on the motion." (*Ibid.*) Its concluding remarks on the problem are as follows. "A determination to remand the matter to the trial court for rehearing of the motion for new trial raises an additional problem. Code of Civil Procedure section 659a contains strict time limits for the filing of affidavits and counteraffidavits with respect to such motions. Those time limits are now long past. They are, however, not jurisdictional. (See Witkin, Cal. Procedure (1954) Attack on Judgment in Trial Court, § 27, and cases there cited.) A rehearing without the opportunity to present evidence in light of the law as changed after the original hearing and pending appeal would be an idle proceeding. We conclude, therefore, that under the narrow and peculiar circumstances of this case there is an inherent judicial power incident to the appellate process to permit the filing of affidavits and counteraffidavits after the remittitur and before rehearing on the motion." (*Clemens, supra,* 8 Cal.App.3d at pp. 21-22.)

The holding in *Clemens* has no bearing on the question of the power (jurisdiction) of the trial court to accept affidavits beyond the 30-day maximum provided in section 659a. It concerns the necessary consequences of appellate jurisdiction. Inherent in appellate jurisdiction is the power to correct and, where appropriate, the appeals court may cause matters to be reheard. This entails resetting the clock on whatever time requirements attend the proceeding. In *Clemens* that required resetting the clock on the *mandatory* (jurisdictional) requirement that the trial court act on the motion for a new trial within 60 days of the notice of entry of judgment. *Clemens*'s incorrect paraphrase of the Witkin "not jurisdictional" passage is unnecessary to sustain its holding. Just as with the unfortunate reiteration of the incorrect paraphrase in *Wiley, Clemens* furnishes no authority on the question whether the aggregate 30-day period for filing of affidavits prescribed in section 659a is mandatory.

The trial court erred in ruling that the Gonzales affidavit should be admitted in evidence. Accordingly, Dr. Weiner's contention that the trial

court erred because the uncontradicted averments contained in the affidavit compel the grant of a new trial is not meritorious.

II*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Davis, J., and Nicholson, J., concurrred.

Appellants' petition for review by the Supreme Court was denied November 20, 1996.

---

*See footnote 1, *ante*, page 1666.