Filed 1/19/17

# IN THE SUPREME COURT OF CALIFORNIA

BERTHE FELICITE KABRAN,    )
             )
   Plaintiff and Respondent,  )
             )     S227393
   v.          )
             )   Ct.App. 4/1 D064133
SHARP MEMORIAL HOSPITAL,  )
             )    San Diego County
   Defendant and Appellant.  )  Super. Ct. No. 37-2010-
             )   00083678-CU-PO-CTL
_____)

   A jury returned a special verdict finding that Sharp Memorial Hospital (the Hospital) was negligent in its treatment of Eke Wokocha but that this negligence did not cause his quadriplegia. Shortly thereafter, Wokocha died. An autopsy revealed evidence that, according to Wokocha's widow, Berthe Kabran, called into question the jury's causation determination. Kabran moved for a new trial on the basis of this evidence. In submitting expert affidavits explaining the significance of this evidence, Kabran did not timely pay the necessary filing fee. The Hospital did not object to the timeliness of the affidavits, and the trial court granted Kabran's motion for a new trial. The Hospital, relying on *Erikson v. Weiner* (1996) 48 Cal.App.4th 1663 (*Erikson*), argued on appeal that because the affidavits were not timely filed, the trial court lacked jurisdiction to rely on them in hearing the new trial motion. The Court of Appeal held that the trial court did not lack fundamental jurisdiction and that the Hospital forfeited its challenge to the timeliness of the affidavits by failing to object in the trial court.

1

We conclude that Code of Civil Procedure section 659a does not deprive a court of fundamental jurisdiction to consider affidavits submitted after the 30-day deadline set forth in the statute. Because the Hospital did not object to the timeliness of the affidavits in the trial court, it may not raise this issue for the first time on appeal. Accordingly, we affirm the judgment of the Court of Appeal.

**I.**

Wokocha sued the Hospital in October 2012, alleging he was mishandled by an occupational therapist during a postoperative stay at the Hospital in January 2009. The Hospital's negligence, Wokocha alleged, caused spinal shock and bleeding, which in turn caused Wokocha's deterioration into quadriplegia. The suit proceeded to trial. In February 2013, the jury returned a special verdict finding that the Hospital was negligent in the care of Wokocha but that this negligence was not a substantial factor causing Wokocha's quadriplegia. (All dates in the following two paragraphs are in the year 2013.)

Shortly after the verdict, Wokocha died, and the court substituted Kabran as plaintiff. On March 1, Kabran filed a notice of intent to move for a new trial, alleging newly discovered material evidence as a ground for the motion. On March 6, the parties stipulated to a 20-day extension under Code of Civil Procedure section 659a for Kabran to file moving papers and affidavits in support of her motion for a new trial. (All undesignated statutory references are to the Code of Civil Procedure.) The trial court's order granting the extension identified Monday, April 1, as the deadline for filing. Because the César Chávez Day holiday fell on Sunday, March 31, that year, April 1 was a court holiday. On April 2, Kabran served the Hospital and attempted to file with the court a memorandum of points and authorities along with two declarations — one by Dr. Guerad Grice, the other by Dr. Jeffrey Gross — in support of her motion for a new trial. Kabran's memorandum and supporting affidavits argued for a new trial on the

2

basis of autopsy findings tending to show that the mass on Wokocha's spine causing his deterioration into quadriplegia was not a tumor, as the Hospital had argued, but a "traumatic neuroma" consistent with the injury Wokocha allegedly suffered during his postoperative stay in January 2009.

The series of events that gave rise to the issue before us began when Kabran, in filing the memorandum and supporting affidavits on April 2, failed to pay the requisite filing fee. On April 4, the clerk of court canceled the original April 2 time stamp and did not process the submissions. Before the time stamp was canceled, however, Kabran obtained via an ex parte hearing on April 3 an order setting a new trial motion hearing for April 12 with a deadline for the Hospital's opposition papers of April 10. Kabran's memorandum was stamped as received, with filing fees, on April 5; the Gross and Grice affidavits were filed on April 9. In opposition, the Hospital submitted numerous evidentiary objections to the content of the affidavits and argued that the allegedly new evidence was cumulative, could have been discovered through reasonable diligence before trial, and would not have changed the outcome of the trial. The Hospital did not object to the admission of the memorandum or supporting affidavits on the ground that they were untimely filed. On April 12, the trial court granted Kabran's motion for a new trial on the grounds that "[t]here is a probability that this new evidence [the autopsy findings] may render a different result in a new trial" and that the evidence "could not, with reasonable diligence, [have] been discovered and produced at trial." The order quoted Grice's affidavit in support of this conclusion.

The Hospital appealed. In addition to disputing the new trial order on its merits, the Hospital argued for the first time that the Grice and Gross affidavits were not timely filed under section 659a, that the 30-day aggregate period set forth in section 659a is jurisdictional, and that the trial court's order relying on the

belated filings was therefore void. The Court of Appeal rejected this argument, explaining that the trial court's reliance on the Grice and Gross affidavits was "*in excess* of its jurisdiction, but nevertheless within its fundamental jurisdiction." "Because [the Hospital] did not challenge the timeliness" of Kabran's affidavits and instead opposed the motion on the merits, the Court of Appeal held any objection waived and went on to affirm the trial court's new trial order on the merits. In so holding, the Court of Appeal disagreed with *Erikson*, *supra*, 48 Cal.App.4th 1663, which had held that the 20-day extension in section 659a is the exclusive remedy for a failure to file within the initial 10-day period and so trial courts lack jurisdiction to consider affidavits filed after the 30-day aggregate period. We granted review.

## II.

Sections 656 through 662 set forth when and how a party may move for a "re-examination of an issue of fact in the same court after a trial and decision by a jury, court, or referee." (§ 656.) Sections 659, 659a, and 660 set forth the procedures and deadlines associated with litigating a new trial motion. A party must file a notice of its intent to move for a new trial either between the rendering of a decision and the judgment being entered; or within 15 days after the clerk mailed, or the opposing party received service of, written notice of the judgment; or within 180 days after the judgment was entered, "whichever is earliest." (§ 659.) Once jurisdiction is established by motion, the trial court has to rule on the motion within 60 days from the mailing or service of notice of judgment or, if no notice was given, within 60 days after the notice of intention to move for a new trial. (§ 660.)

Section 657 sets forth the possible grounds on which a trial court may grant a new trial motion. Section 658 provides that although such a motion generally may rely solely on the minutes of the court, a motion that relies on newly

4

discovered evidence, juror misconduct, accident or surprise, or an irregularity in the proceedings "must be made upon affidavits." Section 659a establishes deadlines for submission of the required affidavits. At the time Kabran submitted the Grice affidavit, section 659a read as follows: "Within 10 days of filing the notice, the moving party shall serve upon all other parties and file any affidavits intended to be used upon such motion. Such other parties shall have ten days after such service within which to serve upon the moving party and file counter-affidavits. The time herein specified may, for good cause shown by affidavit or by written stipulation of the parties, be extended by any judge for an additional period of not exceeding 20 days." (Former § 659a, as amended by Stats. 1989, ch. 1416, § 20, p. 6232.)

"A motion for a new trial is 'a new statutory proceeding, collateral to the original proceeding' and constitutes a new action brought to set aside the judgment." (*Spruce v. Wellman* (1950) 98 Cal.App.2d 158, 161.) Both the "right to move for a new trial" and the court's jurisdiction to hear it are creatures of statute. (*Wagner v. Singleton* (1982) 133 Cal.App.3d 69, 72; 8 Witkin, Cal. Procedure (5th ed. 2008) Attack on Judgment in Trial Court, § 19, p. 601 ["there is no inherent power in the trial court to grant a new trial"].) A trial court gains jurisdiction to hear such a motion only after a party files a timely notice of intent and judgment has been entered. (*Tabor v. Superior Court* (1946) 28 Cal.2d 505, 508 [court had no jurisdiction to hear new trial motion filed before court signed and filed findings of fact and conclusion of law, and parties cannot overcome this jurisdictional defect by stipulation or waiver].) Thus, a "trial court does not have the jurisdiction to make an order granting a new trial on its own motion." (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 151.) Nor is it "within the power of the litigants to invest the court with jurisdiction to hear and determine the motion for a

5

new trial by consent, waiver, agreement or acquiescence." (*City of Santa Barbara v. Superior Court* (1966) 240 Cal.App.2d 612, 614.)

Because the trial court's jurisdiction to hear a new trial motion is contingent upon the moving party's timely filing of notice, this court and the Courts of Appeal have repeatedly held that failure to adhere to the statutory provisions described above will make a subsequently granted new trial order reversible on appeal. "[I]t has uniformly been held that an order granting a new trial is in excess of jurisdiction and void if, for example, it is made . . . on a ground not prescribed by statute (*Laumann v. Conner* (1936) 12 Cal.App.2d 631; cf. *Fomco, Inc. v. Joe Maggio, Inc.* (1961) 55 Cal.2d 162, 166), or upon a notice of intention that is filed prematurely (*Fong Chuck v. Chin Po Foon* (1947) 29 Cal.2d 552; see also *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 458–462) or too late (*Smith v. Ibos* (1937) 22 Cal.App.2d 551) or is not served on an adverse party (*Cox v. Certified Grocers of Cal. Ltd.* (1964) 224 Cal.App.2d 26, 31), or if the court purports to grant the motion after expiration of the statutory time for ruling (*Hinrichs v. Maloney* (1959) 169 Cal.App.2d 544)." (*Mercer v. Perez* (1968) 68 Cal.2d 104, 118.)

In particular, the trial court loses jurisdiction to hear a new trial motion if no notice of intent is filed within 15 days of the mailing or service of notice of entry of judgment, or within 180 days of the entry of the judgment. (§ 659, subd. (b) ["The times specified . . . shall not be extended by order or stipulation"]; see *Neff v. Ernst* (1957) 48 Cal.2d 628, 634 ["The time limit prescribed by law . . . is jurisdictional"]; *Tri-County Elevator Co. v. Superior Court* (1982) 135 Cal.App.3d 271, 274.) If notice *is* filed, the court loses power to rule on the motion after 60 days. (*Siegal v. Superior Court* (1968) 68 Cal.2d 97, 101.)

By contrast, the Courts of Appeal have consistently held that the 10-day deadline for the filing of affidavits is not jurisdictional. A court may retroactively

6

extend the deadline for filing to the full 30-day period even if the party did not seek an extension in advance. (See *Fredrics v. Paige* (1994) 29 Cal.App.4th 1642, 1648; *Boynton v. McKales* (1956) 139 Cal.App.2d 777, 782.) In *Wiley v. Southern Pacific Transportation Co.* (1990) 220 Cal.App.3d 177, 187, the party opposing a new trial order argued for the first time on appeal that the moving party had failed to file a statutorily required declaration in support of his new trial motion. *Wiley* held that the moving party's failure to file the declaration did not make the new trial order void where the opposing party did not object on that ground in the trial court and the motion was granted before the 30-day period expired. (*Id.* at p. 188.) If the opposing party had raised the issue during that period, *Wiley* reasoned, there would still have been time for the moving party to cure the error. (*Ibid.*)

Here, the Hospital failed to challenge an affidavit filed after the 30-day aggregate period had expired. Did the trial court have power to grant a new trial on the basis of that affidavit, or is such a new trial order void for lack of jurisdiction? In *Clemens v. Regents of University of California* (1970) 8 Cal.App.3d 1, the Court of Appeal concluded that the 30-day aggregate period is not jurisdictional, at least under the "narrow and peculiar circumstances" presented by that case. (*Id.* at pp. 21–22.) By contrast, several decisions have held that a trial court must disregard affidavits filed after section 659a's deadlines; these decisions, according to the Hospital, suggest that the 30-day aggregate period is jurisdictional. (See *Maple v. Cincinnati, Inc.* (1985) 163 Cal.App.3d 387, 391–392; *Sitkei v. Frimel* (1948) 85 Cal.App.2d 335, 339.) But none of these cases addressed the jurisdictional question. In *Hicks v. Ocean Shore Railroad, Inc.* (1941) 18 Cal.2d 773, we affirmed the denial of a new trial, explaining that an affidavit filed after the statutory period did "not properly constitute a part of the record" and need not have been considered by the trial court. (*Id.* at p. 790.) *Hicks* made no mention of whether the untimeliness was raised in the trial court,

but the point was not relevant. We merely concluded that the trial court did not abuse its discretion in denying a new trial on the basis of affidavits that on their face were submitted after the statutory deadline. (*Id.* at pp. 789–790.)

In *Erikson*, the Court of Appeal squarely addressed this question and held that the 30-day deadline for filing affidavits is jurisdictional. Plaintiff Erikson had been awarded significant damages in a medical malpractice suit, and defendant Weiner moved for a new trial due to juror misconduct. Weiner filed four affidavits in succession: one on October 24, the final day of an extension granted by the trial court; two on November 8; and a supplemental affidavit at the hearing on November 14. Three of the four affidavits were by the same juror. (*Erikson*, *supra*, 48 Cal.App.4th at pp. 1667–1668.) Over Erikson's objection, the trial court accepted a declaration filed after the 30-day aggregate period had ended. (*Id.* at p. 1669.) The trial court denied Weiner's motion for a new trial. On appeal, the court held that it would not consider the belatedly filed affidavit in determining whether the trial court abused its discretion in denying the new trial motion. (*Id.* at p. 1671.)

Treating the terms "mandatory" and "jurisdictional" as synonyms, *Erikson* concluded that the aggregate 30-day period for filing affidavits is mandatory. (*Erikson*, *supra*, 48 Cal.App.4th at p. 1671.) The court focused on section 659a's requirement that the moving party "*shall* file his affidavits within 10 days" and construed the 20-day extension as "a precise and expressly limited remedy for failure to comply." (*Erikson*, at p. 1672.) Observing that the limitation of a 20-day extension "is hedged by other mandatory time frames for initiating and resolving a new trial motion," *Erikson* reasoned that "the extension of time to file affidavits beyond the aggregate 30-day period provided in section 659a will almost always encroach upon the interests of the opposing party to her allotted time for response." (*Ibid.*)

8

The Court of Appeal below found *Erikson*'s reasoning unpersuasive.  First, the court concluded that the use of "shall" in section 659a does not automatically mean the time limits are jurisdictional.  (See *Nichols v. Hast* (1965) 62 Cal.2d 598, 600–601 [use of "shall" in section 659 did not preclude trial court from granting new trial on basis of insufficiency of the evidence notwithstanding moving party's failure to state that the motion was on the minutes of the court].)  Second, rather than construe the 20-day extension as a remedy for a party's failure to abide by the initial 10-day limit, the Court of Appeal viewed this provision as "merely giv[ing] the party the option to obtain an extension."  So construed, the statute did not specify any penalties for noncompliance, as a jurisdictional statute would.  Third, the court said *Erikson* erred in failing to distinguish between "mandatory" and "jurisdictional" procedural provisions.  "[I]n light of the general rule and the absence of clear legislative intent to the contrary . . . the period in which to file opposing papers . . . is not jurisdictional in the fundamental sense. . . ."  The trial court may have erred in accepting the affidavit, the Court of Appeal reasoned, but the Hospital forfeited any objection " 'by failing to preserve it in the trial court.' "

## III.

" 'When courts use the phrase "lack of jurisdiction," they are usually referring to one of two different concepts, although . . . the distinction between them is "hazy." ' [Citation.]" (*People v. Lara* (2010) 48 Cal.4th 216, 224 (*Lara*).) A lack of fundamental jurisdiction is " ' "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties. [Citation.] . . ." [¶] . . . [F]undamental jurisdiction cannot be conferred by waiver, estoppel, or consent.  Rather, an act beyond a court's jurisdiction in the fundamental sense is null and void' *ab initio.*  [Citation.]  'Therefore, a claim based on a lack of . . . fundamental jurisdiction[] *may be raised for the first time on appeal.*  [Citation.]' " (*Id.* at pp. 224–225, italics added.)  Likewise, "a

9

collateral attack on a final judgment may be made at any time when the judgment under challenge is *void* because of an absence of 'fundamental jurisdiction.' " (*People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704, 716, fn. 7.) Here, when we refer to a court's "lack of jurisdiction" or the "jurisdictional" nature of a statute, we are referring to the court's fundamental jurisdiction.

"Even when a court has fundamental jurisdiction, however, the Constitution, a statute, or relevant case law may constrain the court to act only in a particular manner, or subject to certain limitations." (*People v. Ford* (2015) 61 Cal.4th 282, 286–287.) We have described courts that violate procedural requirements, order relief that is unauthorized by statute or common law, or otherwise "fail to conduct [themselves] in the manner prescribed" by law as acting "in *excess* of jurisdiction." (*Lara*, *supra*, 48 Cal.4th at pp. 224–225.) Because a court that acts in excess of jurisdiction still has "jurisdiction over the subject matter and the parties in the fundamental sense" (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 (*Abelleira*)), any such act is "valid until set aside, and parties may be precluded from setting it aside by such things as waiver, estoppel, or the passage of time" (*People v. Ruiz* (1990) 217 Cal.App.3d 574, 584). In contrast to errors concerning a court's fundamental jurisdiction, "[e]rrors which are merely in excess of jurisdiction should be challenged directly . . . and are generally not subject to collateral attack once the judgment is final . . . . " (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 661.)

In interpreting statutory requirements, courts have also used the terms "mandatory" and "directory." Whether a requirement is mandatory or directory is determined largely by its effect: "If the failure to comply with a particular procedural step does not invalidate the action ultimately taken . . . the procedural requirement is referred to as 'directory.' If, on the other hand, it is concluded that noncompliance does invalidate subsequent action, the requirement is deemed

10

'mandatory.' [Citation.]" (*Edwards v. Steele* (1979) 25 Cal.3d 406, 410 (*Edwards*); see *People v. Gray* (2014) 58 Cal.4th 901, 909 (*Gray*).) The mandatory-directory distinction is not to be confused with the distinction between "obligatory" and "permissive" statutory provisions. (*People v. McGee* (1977) 19 Cal.3d 948, 959 (*McGee*).) The latter distinction concerns whether a governmental entity or party is required to conform to a certain procedure (i.e., obligatory) or whether it "may or may not comply as it chooses" (i.e., permissive). (*Id.* at p. 959; see *B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 182.) By contrast, " 'the "directory-mandatory" distinction is concerned only with whether a *particular remedy* — invalidation of the ultimate governmental action — is appropriate when a procedural requirement is violated.' " (*People v. Allen* (2007) 42 Cal.4th 91, 101, italics added (*Allen*); see *ibid.* [noncompliance with a directory rule does not invalidate the underlying action, but the rule may be enforced by other means, " 'such as injunctive relief, mandamus, or monetary damages' "].)

Erikson understood "mandatory" as a synonym for "jurisdictional." (*Erikson*, *supra*, 48 Cal.App.4th at p. 1671.) This court also has suggested on occasion that the "mandatory" and "jurisdictional" labels refer to the same concept. (See *Edwards*, *supra*, 25 Cal.3d at p. 410; *California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1148 (*Correctional Peace Officers*).) Where the statutory provision at issue governs a decisionmaking entity's exercise of authority — like that of an administrative agency — a "mandatory" statute may be "jurisdictional" in the sense that the entity lacks the power to take the action at issue if it does not comply with the statute. (See *Edwards*, at p. 410 [hearing deadlines for board of permit appeals]; *Gray*, *supra*, 58 Cal.4th 901 [30-day warning period before issuing citations using a newly

11

installed automated traffic enforcement device]; *City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905 [notice to landlord before appointment of a receiver].)

But a party's failure to comply with a mandatory requirement "does not necessarily mean a court loses *fundamental* jurisdiction resulting in 'an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' " (*Allen*, *supra*, 42 Cal.4th at p. 101, fn. 5, quoting *Abelleira*, *supra*, 17 Cal.2d at p. 288.) It is a "misuse of the term 'jurisdictional' . . . to treat it as synonymous with 'mandatory' " as a general matter. (2 Witkin, Cal. Procedure, *supra*, Jurisdiction, § 4, p. 578.) "There are many time provisions, e.g., in procedural rules, that are not directory but mandatory; these are binding, and parties must comply with them to avoid a default or other penalty. But failure to comply does not render the proceeding void" in a fundamental sense. (*Ibid.*; see *Poster v. Southern Cal. Rapid Transit District* (1990) 52 Cal.3d 266, 274–275; *City of Santa Clara v. Superior Court* (1971) 4 Cal.3d 545, 551, fn. 2 (*Santa Clara*) [Courts of Appeal "erred in reasoning that the limitation, because mandatory, was necessarily jurisdictional."].) The high court has similarly recognized, as a matter of federal law, that "mandatory" rules should not always "be given the jurisdictional brand." (*Henderson v. Shinseki* (2011) 562 U.S. 428, 435; see *Arbaugh v. Y & H Corp.* (2006) 546 U.S. 500, 510; *Eberhart v. United States* (2005) 546 U.S. 12, 17–18; see also *Bowles v. Russell* (2007) 551 U.S. 205, 216–217 (dis. opn. of Souter, J.).)

For example, a statute of limitations may be "mandatory in the sense that the court may not excuse a late complaint on grounds of mistake, neglect, or the like," but "it is not 'jurisdictional.' " (*Santa Clara*, *supra*, 4 Cal.3d at p. 551, fn. 2.) A properly raised objection to an untimely complaint may require that the court dismiss it, and the court's failure to dismiss is reversible on appeal. But a party cannot raise the untimeliness for the first time on appeal or in a collateral

12

attack. If an untimely complaint results in a judgment, the judgment will not be disturbed on timeliness grounds if the defendant did not properly preserve a statute of limitations defense. (See *Samuels v. Mix* (1999) 22 Cal.4th 1, 8; cf. *Gonzalez v. Thaler* (2012) 565 U.S. __, __ [132 S.Ct. 641, 651] ["calling a rule nonjurisdictional does not mean that it is not mandatory or that a timely objection can be ignored"].)

In sum, jurisdictional rules are mandatory, but mandatory rules are not necessarily jurisdictional. Noncompliance with a mandatory rule can result in invalidation of the action so long as the noncompliance is properly raised; a party can forfeit its challenge to the noncompliance by failing to object. Noncompliance with a jurisdictional rule cannot be excused or forfeited; a party may assert such noncompliance for the first time on appeal or in a collateral attack as a ground for invalidating the action. In addition, a court may decide on its own motion that it lacks authority over the action because of noncompliance with a jurisdictional rule. (See *Abelleira*, *supra*, 17 Cal.2d at pp. 302–303.)

Sections 657, 659, and 660, which govern on what ground and in what time period a litigant may seek a new trial, fall into the jurisdictional category. Not only is a party's attempt to file a notice of intent after the relevant deadline invalid, but the court has no power to issue a ruling on the basis of an untimely filed notice or on a ground not set forth in the statute. (See § 660 ["the power of the court to rule on a motion for a new trial shall expire 60 days from" the mailing, service, or relevant filing]; *Watkins v. Nutting* (1941) 17 Cal.2d 490, 499 ["A notice of intention to move for a new trial upon one or more of the grounds specified in the Code of Civil Procedure is essential to the court's jurisdiction."]; *Wagner v. Singleton*, *supra*, 133 Cal.App.3d at p. 72 [trial court lacks jurisdiction to grant new trial on grounds not specified in the notice of intent]; *In re Marriage of Beilock* (1978) 81 Cal.App.3d 713, 721 ["It is well settled that a timely filing of

13

the notice of intention to move for a new trial [under section 659] is jurisdictional, and the time cannot be extended or waived by the parties."].)  Thus, a party's failure to comply with any of these sections " 'may be raised for the first time on appeal.' " (*Lara*, *supra*, 48 Cal.4th at p. 225.)

The question here is whether section 659a's deadlines are similarly jurisdictional.  We hold that they are not.  As explained below, the Court of Appeal correctly concluded that the Hospital cannot challenge Kabran's alleged noncompliance for the first time on appeal.

## IV.

There are two presumptions, one general and one specific, against concluding that a trial court has no power to consider affidavits filed outside the 30-day aggregate period specified in section 659a.  First, we generally presume courts have jurisdiction unless specifically curtailed by the Legislature.  Our case law reflects a preference for the resolution of litigation and the underlying conflicts on their merits by the judiciary.  "While the courts are subject to reasonable statutory regulation of procedure and other matters, they will maintain their constitutional powers in order effectively to function as a separate department of government.  [Citations.]  Consequently an intent to defeat the exercise of the court's jurisdiction will not be supplied by implication." (*Garrison v. Rourke* (1948) 32 Cal.2d 430, 436.)  Second, and more specifically, "[u]nless the Legislature clearly expresses a contrary intent, time limits are typically deemed directory." (*Allen*, *supra*, 42 Cal.4th at p. 102; see *Correctional Peace Officers*, *supra*, 10 Cal.4th at p. 1145 [requirement that board issue disciplinary decision is directory].)

These presumptions are rebuttable.  We find time limits to have jurisdictional significance where the Legislature clearly so intends.  "Courts have . . . adopted various tests to determine the Legislature's 'probable intent' " in such

14

instances.  (*Allen*, *supra*, 42 Cal.4th at p. 102, fn. 6.)  Some courts have held that the presumption may only be overcome where " 'a consequence or penalty is provided for failure to do the act within the time commanded.' " (*Edwards*, *supra*, 25 Cal.3d at p. 410; accord, *Correctional Peace Officers*, *supra*, 10 Cal.4th at p. 1143.)  Other courts have looked to whether the consequences of holding a time limitation mandatory or jurisdictional "would defeat or promote the purpose of the enactment." (*Edwards*, at p. 410, citing *Morris v. County of Marin* (1977) 18 Cal.3d 901, 909–910.)  "There is no ' "simple, mechanical test" ' for making this determination." (*City of Santa Monica v. Gonzalez*, *supra*, 43 Cal.4th at p. 924.)  The question is ultimately one of legislative intent.  (*McGee*, *supra*, 19 Cal.3d at p. 962.)

In construing section 659a, we begin "with the language of the statute, 'giv[ing] the words their usual and ordinary meaning [citation], while construing them in light of the statute as a whole and the statute's purpose [citation].' " (*Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 135.)  The text of section 659a does not reveal a clear legislative intent to deprive courts of the power to consider untimely filed affidavits.  As the Court of Appeal below observed, section 659a's instruction that either party "shall" serve and file affidavits within 10 days does not necessarily imply the deadline is jurisdictional.  "The context of the language, as well as other indicia of legislative intent, must be considered" along with the choice of "may" or "shall." (*Lara*, *supra*, 48 Cal.4th at p. 227.)  Legislative intent that a time limit be jurisdictional may be signaled where the statute sets forth time limits in "unusually emphatic form," by "reiterat[ing] its limitations several times in several different ways," or, for example, by asserting that " 'no [relief] shall be allowed or made after the expiration of the period of limitation prescribed . . . unless a claim . . . is filed . . . within such period.' " (*United States v. Brockamp* (1997) 519 U.S. 347, 350–351.)

Sections 659 and 660 include such clear markers of legislative intent that their respective deadlines are jurisdictional.  Section 660 mentions jurisdiction expressly:  "[T]he power of the court to rule on a motion for a new trial shall expire 60 days from" the filing of the notice of intent or service of notice of entry of judgment.  "If such motion is not determined within said period of 60 days, . . . the effect shall be a denial of the motion without further order of the court." (*Ibid.*)  And section 659, subdivision (b) provides that "[t]he times specified . . . shall not be extended by order or stipulation . . . ."  Section 659a, by contrast, has no such language or clear limits on jurisdiction.  It is significant that the Legislature, while using language to identify closely related time limitations in this set of statutes as jurisdictional, did not use similar language with regard to the affidavit deadlines.  (*In re Ethan C.* (2012) 54 Cal.4th 610, 638 ["When language is included in one portion of a statute, its omission from a different portion addressing a similar subject suggests that the omission was purposeful."].)

Further, unlike sections 659 and 660, section 659a contains no " 'consequence or penalty' " for noncompliance with the affidavit filing deadlines. (*Edwards*, *supra*, 25 Cal.3d at p. 410.)  As the Court of Appeal below observed, section 659a "merely gives the party the option to obtain an extension of that time."  Our precedent disfavors inferring a penalty for noncompliance, as the court in *Erikson* did (see *Erikson*, *supra*, 48 Cal.App.4th at p. 1672); such penalties or consequences should "*clearly* reflect[] legislative intent to deprive the [court or agency] of further jurisdiction."  (*Correctional Peace Officers*, 10 Cal.4th at p. 1148, italics added.)

The fact that the deadlines of sections 659 and 660 are jurisdictional may still suggest that the 30-day aggregate period in section 659a is jurisdictional if all of the deadlines form an intricately balanced or interconnected timing scheme. *Erikson* reasoned that because the affidavit deadlines are "hedged by other

16

mandatory time frames for initiating and resolving a motion for new trial," they must be similarly jurisdictional. (*Erikson*, *supra*, 48 Cal.App.4th at p. 1672.)

The statutory scheme here provides that submission of affidavits must come within the 60-day jurisdictional period set forth by section 660. But the deadlines specified in section 659a are not strictly tied to the timeline set forth in sections 659 and 660. Where the start of the 60-day jurisdictional period is triggered by the clerk mailing or the nonmoving party serving written notice of the entry of judgment, it is impossible for both parties to benefit from the full periods for filing affidavits set forth in section 659a. If the moving party takes the full 15 days to file its notice of intent to move for a new trial after being served notice of entry of judgment, and if both parties receive the full extensions authorized by section 659a, then the final affidavits would not be due until 75 days after notice of entry of judgment was sent or served — at which point the trial court would have already lost jurisdiction over the new trial motion. Thus, although the Hospital is correct that a moving party's failure to adhere to the deadlines necessarily comes at the expense of the nonmoving party, the Legislature did not enact a scheme designed to ensure symmetry between the moving and nonmoving parties with respect to the time allowed for filing affidavits, as even strict adherence to the deadlines does not ensure such symmetry. The section 659a deadlines may be "hedged" by jurisdictional time limits (*Erikson*, *supra*, 48 Cal.App.4th at p. 1672), but those jurisdictional time limits in sections 659 and 660 are in no way dependent on or affected by the timing of affidavit submissions under section 659a. (Section 659a was recently amended as part of a legislative effort to reconcile the deadlines and procedures for motions for a new trial, motions for judgment notwithstanding the verdict, and motions to vacate the judgment in an effort to reduce confusion among parties filing one or more of these related posttrial motions. (Stats. 2014, ch. 93, § 2.).)

17

Moreover, whereas the Legislature enacted section 660 "to do away with all uncertainty as to the power and jurisdiction of trial courts in the premises" (*Strehlow v. Mothorn* (1925) 197 Cal. 112, 116), the history of section 659a reveals nothing that suggests a legislative intent to deprive courts of jurisdiction to consider affidavits filed outside of the specified time limits. Section 659a was enacted in 1929 (Stats. 1929, ch. 479, § 4, p. 84) and, between then and the time of Kabran's new trial motion, has undergone only minor revisions not relevant to the question before us. Before the adoption of section 659a, provisions for the submission of affidavits in support of a new trial motion were part of section 659. The addition of section 659a was part of Senate Bill No. 73, an omnibus bill introduced at the behest of the Judicial Council in order to (among other things) "reduce the volume of frivolous and unnecessary appeals brought to correct errors which easily might be remedied by the trial courts" by affording "litigants every reasonable opportunity" to attempt to redress errors through a new trial motion in the lower court before proceeding on appeal. (Judicial Council of Cal., 2d. Rep. to Governor and Legislature (1929) Synopsis of Bills Introduced in Legislature, p. 81 (Judicial Council Rep.) [discussing Sen. Bill No. 73 (1929 Reg. Sess.)]; *id.* at p. 83 [findings regarding § 662].)

The most significant changes initially proposed were eliminated before the passage of section 659a. The Judicial Council Report identified two provisions from the proposed section 659a as providing "for a complete and fair disclosure in the trial court, both to the judge and the litigants, of all alleged errors committed therein": first, that along with affidavits, parties must submit "points and authorities"; and second, that failure to submit any supporting points or affidavits "may be construed as an abandonment of the motion, or as an admission that the same should be granted." (Judicial Council Rep., *supra*, at p. 82 [findings regarding § 659a].) But both of these provisions were removed by committee

18

amendments prior to the passage of Senate Bill No. 73.  (Sen. Bill No. 73 (1929 Reg. Sess.), as amended Apr. 12, 1929.)  Thus, section 659a, as eventually passed, simply "incorporate[d] the existing provisions in section 659, relating to the affidavits to be used in support of the motion for a new trial.  The only change made is the insertion of a phrase permitting the parties to extend, by stipulation, the time for the filing of such affidavits."  (Hollzer, *Synopsis of Legislation, Enacted in 1929, Upon Recommendation of Judicial Council* (1929) 4 State Bar J. 38, 41.)

"Invariably, 'courts look to the procedure's purpose or function' " in assessing whether " 'noncompliance has an invalidating effect.' "  (*City of Santa Monica v. Gonzalez*, *supra*, 43 Cal.4th at p. 924.)  The Hospital argues that the purpose of section 659a is to protect nonmoving parties; any delay in filing affidavits by the moving party necessarily subtracts from the time available to the opposing party to submit its own materials because the court must rule on the motion within a 60-day period.  The Hospital's rule would effectively impose upon trial courts a sua sponte duty to ensure that affidavits are timely filed within the 30-day aggregate period.  But that burden should instead fall on the nonmoving party, which is in the best position to assert its interests in the fairness and efficiency of the litigation process.

The Hospital could have objected to the allegedly untimely affidavits at the April 3, 2013 ex parte hearing or in the opposition it filed on April 10, 2013.  But the Hospital did not register any such objection on the record.  The Hospital argues that because the clerk did not cancel the affidavits' time stamp until April 4, it "could not have possibly known that Plaintiff's papers were not timely filed" at the time of the April 3 ex parte hearing.  But the Hospital had been timely and personally served with the affidavits on April 2 and thus could not have been prejudiced by their inclusion at the ex parte hearing.  In any event, the Hospital

19

was or should have been aware of the issue by April 10, yet the Hospital did not raise the issue in the opposition it filed that day.

Because sections 659 and 660 dictate when litigation over a new trial motion may begin and when it must end, those deadlines are strictly enforced as jurisdictional. Section 659a, by contrast, governs the dynamic period of litigation itself. Section 659a's deadlines aim to provide adequate time and flexibility for the parties to submit materials and respond to each other's submissions, but the parties may reach stipulations or other arrangements in order to further what they mutually regard as a fair and efficient litigation process. Trial courts have no sua sponte duty to monitor compliance with the deadlines for submitting affidavits; noncompliance, without objection by any party, does not deprive the court of jurisdiction to consider the affidavits.

Section 659a is distinguishable from the time limits set forth in section 657, which requires the trial court to file a statement of reasons within 10 days of the order determining the motion. We held this time limit to be jurisdictional because the objective of this provision was to provide "a precise record for appellate review" (*La Manna v. Stewart* (1975) 13 Cal.3d 413, 420) and because "final responsibility for compliance" with that section rested with the trial judge (*id*. at p. 425). Section 657's deadlines ensure appropriate review of a trial court's decision by an appellate court and thus require enforcement outside the bounds of the trial court itself, which might otherwise enlarge its own role at the expense of appellate decision makers. (Cf. *Mercer v. Perez*, *supra*, 68 Cal.2d at pp. 123–124 [permitting nunc pro tunc revision of inadequate statement of grounds eliminates any incentive for court's timeliness, and permitting courts to state no grounds undermines goal of effective appellate review].) Whereas " 'the public, . . . the bar, . . . [and] the courts' " (*La Manna*, at p. 424) are burdened by additional appellate filings when a trial court's statement of reasons is untimely or

20

nonexistent, only a particular "case-specific interest in timeliness" (*John R. Sand & Gravel Co. v. United States* (2008) 552 U.S. 130, 133) is implicated by an untimely filed affidavit.

In light of section 659a's purposes as well as the presumption against depriving courts of jurisdiction and the absence of explicit language in section 659a doing so, we conclude that the 30-day aggregate period for the submission of affidavits is not jurisdictional. We disapprove *Erikson v. Weiner*, *supra*, 48 Cal.App.4th 1663, to the extent it is inconsistent with this opinion. But we note that despite its repeated descriptions of section 659a as "jurisdictional," *Erikson* is distinguishable because the nonmoving party there actually objected to the trial court's consideration of the untimely filed affidavit. (*Erikson*, at p. 1669.) *Erikson* addressed only whether the trial court was required to sustain the nonmoving party's timeliness objection when it was properly raised in the trial court; it did not address whether such a timeliness objection can be raised for the first time on appeal. Here, the Hospital failed to assert a timeliness objection in the trial court. The alleged untimeliness of Kabran's affidavits cannot be raised for the first time on appeal and did not deprive the trial court of jurisdiction to consider them.

## CONCLUSION

We hold that the trial court had fundamental jurisdiction to consider Kabran's allegedly untimely filed affidavits in support of her motion for a new trial. The Hospital, having failed to object to the affidavits' timeliness in the trial court, may not challenge the trial court's reliance on those affidavits for the first time on appeal. We affirm the judgment of the Court of Appeal.

**LIU, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

22

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Kabran v. Sharp Memorial Hospital

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 236 Cal.App.4th 1294
**Rehearing Granted**

_____

**Opinion No.** S227393
**Date Filed:** January 19, 2017

_____

**Court:** Superior
**County:** San Diego
**Judge:** John Meyer

_____

**Counsel:**

Lotz, Doggett & Rawers, Jeffrey S. Doggett, Evan J. Topol and Patrick F. Higle for Defendant and Appellant.

Berman & Riedel, William Michael Berman; Kenneth M. Sigelman & Associates, Kenneth M. Sigelman, Penelope A. Phillips; Williams Iagmin and Jon R. Williams for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Jeffrey S. Doggett
Lotz, Doggett & Rawers
101 West Broadway, Suite 1110
San Diego, CA  92101
(619) 233-5565

Jon R. Williams
Williams Iagmin
666 State Street
San Diego, CA  92101
(619) 238-0370