Filed 8/20/25

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| CITY OF SALINAS et al., <br><br>     Petitioners, <br><br>     v. <br><br> WORKERS' COMPENSATION APPEALS BOARD and LANCE D. MIRACO, <br><br>     Respondents. | H052062 <br> (WCAB No. ADJ14038029) |


We consider here whether the Workers' Compensation Appeals Board (WCAB, appeals board, or the Board) acted in excess of its jurisdiction under former section 5909 of the Labor Code[1] (Stats. 1992, ch. 1226, § 5, p. 5766) (former section 5909) when it granted a petition for reconsideration of a decision issued more than 60 days earlier. We agree with recent cases holding that the Board acts in excess of its jurisdiction under these circumstances. However, we further conclude that the 60-day timeframe for the grant or denial of a petition for reconsideration does not implicate the

---

[1] All further unspecified statutory references are to the Labor Code.

Board's fundamental jurisdiction, allowing for the possibility of equitable tolling in a narrow class of cases.

The City of Salinas (City) and Corvel Corporation (Corvel) (together, petitioners) seek writ review of a decision by the Board granting Lance Miraco's petition for reconsideration of a decision by the workers' compensation administrative law judge (WCJ) in Miraco's workplace injury case. Petitioners contend the Board lacked jurisdiction to grant reconsideration of the WCJ's decision because it failed to act on Miraco's petition within 60 days of the filing date, as required by former section 5909. The Board and Miraco (together, respondents) maintain the Board had jurisdiction to act on the petition for reconsideration due to the application of equitable tolling. They contend that tolling should apply when the Board, through no fault of the parties, is unable to review the petition for reconsideration until after the 60-day period has expired.

We decide that former section 5909 did not preclude the application of equitable tolling, and the facts warrant its use here. We therefore affirm the order and opinion of the appeals board.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. Workers' Compensation Claim

In December 2020, Miraco filed an application for workers' compensation claim alleging cumulative injury arising from his employment as a police officer with the City during the period ending on December 31, 2013. Miraco claimed injury to his neck, back, and right leg, and heart disease, gastritis, and insomnia arising out of his employment. The City and its claims administrator, Corvel, filed an answer denying the allegations of the application. The matter proceeded to trial before the WCJ.

2

After trial, the WCJ issued her written findings, award, and order (findings and order), finding that Miraco "sustained injury arising out of and in the course of employment during the period from January 1994 through December 31, 2013, to his low back, right leg, and sustained gastritis, gastroesophageal reflux disease, insomnia and hypertensive cardiac disease." Applying section 5412,[2] the WCJ found the date of injury for Miraco's hypertensive cardiac disease was June 14, 2013, while the date of injury for his orthopedic injuries and related conditions (including gastritis, reflux, and insomnia) was December 16, 2020. The findings and order explained that based on the date of injury, Miraco's workers' compensation claim for hypertensive cardiac disease, filed on December 24, 2020, "is barred and is not compensable, as beyond the statutory limitation imposed by [section] 5405."[3] Based on these findings, the WCJ awarded future medical treatment for Miraco's "injuries to his low back, right leg, gastritis, gastroesophageal reflux disease, and insomnia" but not for his cardiac disease.

*B. Petition for Reconsideration*

On October 16, 2023, Miraco timely submitted a petition for reconsideration of the findings and order. The petition for reconsideration challenged the WCJ's finding that the claim for hypertensive cardiac disease was time barred. Miraco asserted that the facts did not support a finding of compensable temporary disability associated with the cardiac condition, and

---

[2] Section 5412 provides, "The date of injury in cases of occupational diseases or cumulative injuries is that date upon which the employee first suffered disability therefrom and either knew, or in the exercise of reasonable diligence should have known, that such disability was caused by his present or prior employment."

[3] Section 5405 provides "the period within which proceedings may be commenced for the collection of" the relevant benefits "is one year from . . . [¶] (a) The date of injury."

no finding of industrial permanent disability or opinion as to industrial causation for his cardiac condition, until the September 2021 report of qualified medical examiner Robert Nacouzi, M.D. Miraco argued that the WCJ erred in deeming the date of the cardiac injury to be in 2013, based on Dr. Nacouzi's retrospective analysis in 2021 of tests performed on Miraco in June 2013. Instead, he maintained that Dr. Nacouzi's report (received in September 2021) provided the *first* doctor's opinion that Miraco's hypertensive cardiac disease contributed to a permanent disability and was industrially caused. Miraco asked the Board to grant reconsideration and order, pursuant to section 5412, that the date of injury for his hypertensive cardiac disease was September 7, 2021, that the hypertensive cardiac disease was not barred by the statute of limitations, and that further medical care was appropriate for the cardiac condition.

The City and Corvel answered the petition for reconsideration within 10 days, noting there was no substantial disagreement about the relevant facts in the case, including the medical reports addressed in the WCJ decision. As to the disputed date of hypertensive cardiac injury, the City asserted that the medical evidence from 2013 was of permanent disability and supported the WCJ's determination under section 5412.

On November 7, 2023, the WCJ served on the parties a report and recommendation on the petition for reconsideration (report and recommendation). Apart from correcting certain dates referenced in the findings and order, the WCJ recommended denying the petition for reconsideration.

Under former section 5909, based on Miraco's filing of the petition for reconsideration on October 16, 2023, the Board had until December 15, 2023, to "act[] upon" the petition before it was "deemed to have been denied." (See

4

former § 5909 ["A petition for reconsideration is deemed to have been denied by the appeals board unless it is acted upon within 60 days from the date of filing."].)  The Board did not issue its decision until March 12, 2024 (March 12 order), when it granted the petition for reconsideration.

In deeming its March 12 order timely, the Board invoked the judicially created exception to the 60-day deadline articulated in *Shipley v. Workers' Comp. Appeals Bd.* (1992) 7 Cal.App.4th 1104 (*Shipley*) for petitions that are not received by the Board due to procedural irregularity.  The March 12 order noted that pursuant to regulation, petitions for reconsideration are required to be filed at the district office, not directly with the Board, which then has 60 days under former section 5909 to act upon the petition.  However, according to the Board, the *Shipley* decision applies the principle that " 'a party may not be deprived of a substantial right without notice' " to allow tolling of the 60-day period to grant or deny reconsideration during the period that the petition has not yet been received by the Board.

The Board reasoned that pursuant to *Shipley*, timely petitions "filed *and received*" by the Board may be acted upon within the statutory period by either denying or granting the petition, allowing tolling of the 60-day statutory period for "a petition *not received* by the Appeals Board within 60 days due to irregularities outside the petitioner's control."  The Board adopted this approach in the March 12 order.

The Board found that Miraco timely filed his petition for reconsideration in the Salinas district office on October 16, 2023, and while the application was scanned into the electronic adjudication system (EAMS),[4]

---

[4] The March 12 order explained the processing of a petition for reconsideration.  When a petition for reconsideration is filed, it is scanned

notice was not provided to the Board until the district office electronically transmitted the case through EAMS to the Board on January 12, 2024. Because the district office had not timely provided notice to the Board and the delay was not due to any fault of the parties, the Board decided its time to act on Miraco's petition was tolled until 60 days after January 12, 2024. It concluded it had authority to act despite the 60-day limit set forth in former section 5909. The Board asserted its approach was consistent with Court of Appeal decisions since *Shipley* recognizing the application of due process to avoid depriving a party of the statutory right to reconsideration but also acknowledged conflicting Court of Appeal authority in *Zurich American Ins. Co. v. Workers' Comp. Appeals Bd.* (2023) 97 Cal.App.5th 1213 (*Zurich*).

On the merits, the Board granted the petition for reconsideration and substituted its findings for that of the WCJ. It set the date of injury for Miraco's injuries, including hypertensive cardiac disease, as December 11, 2020, and determined that compensation for those injuries was not time-barred.

### C. Petition for Writ of Review

The City and Corvel filed a petition for writ of review in this court (petition) to challenge the lawfulness of the Board's order granting the petition for reconsideration after the expiration of the 60-day statutory

into EAMS pursuant to the division rules (Cal. Code Regs., tit. 8, §§ 10206 [electronic document filing], 10205.11 [manner of filing]). Next, a "task" is sent to the WCJ through EAMS, and the WCJ receives notice that a report is required. (See *id*., tit. 8, §§ 10206, 10962.) However, no such notice is provided to the Board until the district office electronically transmits the case to the Board through EAMS. The EAMS system is maintained by the administrative director of the Division of Workers' Compensation, who administers all 24 district offices and the employment of more than 190 WCJs. (See *Mayor, supra,* 104 Cal.App.5th at p. 1303, fn. 3, review granted.)

6

deadline delineated by former section 5909.  Citing the split in appellate authority regarding the Board's authority to decide a petition after the statutory deadline has passed, petitioners argued that the reasoning in *Shipley* is flawed, the Board's reliance on it misplaced, and the Board's order granting the reconsideration petition a nullity because, under former section 5909, reconsideration was denied by operation of law.

Respondents each filed an answer in opposition to the petition.  Miraco argued that the Board correctly applied the reasoning in *Shipley* to consider a petition for reconsideration when the district office failed to timely forward the file to the Board.  Miraco pointed to the understanding of his counsel, whose prior communications with the Board confirmed that the 60-day period for decision begins only when the Board receives the file from the district office.  In this matter, Miraco's counsel's assistant apparently contacted the Board's reconsideration unit on January 12, 2024, to check the status of the petition for reconsideration and was advised it had not been received and that the Board would request the file from the district office and provide an updated timeline once it obtained the file.  In its answer, the Board further argued that the 60-day statutory timeline is not " 'mandatory and jurisdictional' " and that *Zurich* is not inconsistent with *Shipley* on this point.

On October 15, 2024, this court issued an order granting the writ of review.  The writ of review directed the Board to certify and return its official record in the case to this court and invited briefing.  Miraco and the Board submitted opposition to the requested relief and petitioners filed a reply to the opposition.  After oral argument in this matter and at this court's

request, the parties further submitted supplemental briefing on the doctrine of equitable tolling.[5]

During the briefing period for this writ proceeding, the Legislature amended section 5909, effective July 2, 2024.  We discuss these changes to the statute in our discussion, *post*.  In addition, the California Supreme Court granted review of similar issues in *Mayor v. Workers' Comp. Appeals Bd.* (2024) 104 Cal.App.5th 713 (*Mayor*), review granted December 11, 2024, S287261.

## II.  DISCUSSION

The question presented is whether the Board may apply equitable tolling to act upon a petition for reconsideration after expiration of the 60-day timeline set forth in former section 5909, and, if so, whether the facts of this case warrant the application of tolling principles.

Miraco contends that equitable tolling should be applied in circumstances where, as here, the Board informed the applicant that it has 60 days from when it *receives* the file to act on the reconsideration petition.  He asserts that recent case authority in *Zurich* and *Mayor* is not inconsistent with this approach and maintains that those cases affirmed a so-called "*Shipley* exception" to the 60-day deadline where the Board misleads a diligent petitioner.  He further contends that former section 5909 does not contain any explicit prohibition against equitable tolling.

The Board similarly maintains that equitable tolling may be applied under the circumstances.  However, the Board prefaces its argument by asserting, given the California Supreme Court's decision to consider the

---

[5] This court requested supplemental briefing by the parties on two issues:  whether former section 5909 allowed for equitable tolling and, assuming arguendo that it did, whether the doctrine applies here.

equitable tolling question presented in *Mayor*, that this court should stay proceedings on this writ until the Supreme Court completes its review.

Petitioners oppose awaiting disposition of the California Supreme Court's decision in *Mayor* and assert that the statutory arguments advanced by respondents are inconsistent with case precedent interpreting similar language in other statutory contexts. Petitioners further argue that the various justifications articulated by the Board for allowing reconsideration after expiration of the statutory deadline are a flawed attempt to shift the blame for file transmission errors to other entities. Petitioners assert that by unequivocal operation of law, the Board's failure to comply with former section 5909 results in denial of the petition for reconsideration.

*A. Writ Review and Standard of Review*

Appellate courts are authorized to review WCAB decisions and to issue a writ of review pursuant to section 5950. "The application for writ of review must be made within 45 days after a petition for reconsideration is denied, or, if a petition is granted . . ., within 45 days after the filing of the order, decision, or award following reconsideration." (*Ibid.*) There is no dispute that writ review is the proper mechanism for review in this matter.

"Judicial review 'is limited to determining whether the Board acted "without or in excess of its powers" and whether its decision was unreasonable, not supported by substantial evidence, or procured by fraud.' " (*Mayor*, *supra*, 104 Cal.App.5th at p. 1305, review granted, citing *Department of Corrections & Rehabilitation v. Workers' Comp. Appeals Bd.* (2018) 27 Cal.App.5th 607, 617 (*Department of Corrections*); § 5952.) "A court is not permitted 'to hold a trial de novo, to take evidence, or to exercise its independent judgment on the evidence.' (§ 5952.) 'The findings and

9

conclusions of the appeals board on questions of fact are conclusive and final and are not subject to review.' (§ 5953.)" (*Mayor*, at p. 1305.)

We review issues of statutory interpretation and questions of law de novo. (*Department of Corrections*, *supra*, 27 Cal.App.5th at p. 617.) Nonetheless, "unless clearly erroneous, the [Board]'s interpretation of the workers' compensation laws is entitled to great weight." (*Genlyte Group, LLC v. Workers' Comp. Appeals Bd.* (2008) 158 Cal.App.4th 705, 714; accord *Boehm & Associates v. Workers' Comp. Appeals Bd.* (1999) 76 Cal.App.4th 513, 516 ["[W]e generally defer to the appeals board's interpretation of labor statutes, unless the interpretation is clearly erroneous."].) "When the statutory language is clear and unambiguous, there is no room for the Board's interpretation." (*Department of Corrections*, at p. 617.)

As to whether former section 5909 limited the Board's fundamental jurisdiction to act is a matter of statutory interpretation, (*Zurich*, *supra*, 97 Cal.App.5th at pp. 1226, 1230), we review the availability of equitable tolling de novo.

B.  *Legal Background:*  Shipley*,* Zurich*,* Mayor*, and Statutory Amendments*

During the relevant time period, former section 5909 provided: "A petition for reconsideration is deemed to have been denied by the appeals board unless it is acted upon within 60 days from the date of filing." (Stats. 1992, ch. 1226, § 5, p. 5766.) A denial (or other order or decision) by the Board is further reviewable by seeking a writ of review within 45 days in the Supreme Court or Court of Appeal for the appellate district where the claimant resides. (§ 5950.)

Three published Court of Appeal decisions have considered whether the language of former section 5909 imposes a mandatory deadline that

10

precludes the Board from exercising equitable powers to toll or extend the deadline. This analysis depends on the classification assigned to the 60-day deadline based on the language of the statute and whether it describes fundamental jurisdiction. We review the principles that determine these classifications before turning to the case authority guiding our review.

1. Principles Governing Mandatory and Directory Deadlines

"Statutory deadlines are either mandatory or directory." (*Mayor*, *supra*, 104 Cal.App.5th at p. 1305, review granted.) "Whether a requirement is mandatory or directory is determined largely by its effect: 'If the failure to comply with a particular procedural step does not invalidate the action ultimately taken . . . the procedural requirement is referred to as "directory." If, on the other hand, it is concluded that noncompliance does invalidate subsequent action, the requirement is deemed "mandatory." ' " (*Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 340 (*Kabran*).)

"Mandatory deadlines can be further classified depending on how a violation of the deadline affects a court's jurisdiction." (*Mayor*, *supra*, 104 Cal.App.5th at p. 1306, review granted.) " 'There are many time provisions, e.g., in procedural rules, that are not directory but mandatory; these are binding, and parties must comply with them to avoid a default or other penalty. But failure to comply does not render the proceeding void' in a fundamental sense." (*Kabran*, *supra*, 2 Cal.5th at p. 341.) We refer to such a violation, wherein "courts that violate procedural requirements, order relief that is unauthorized by statute . . ., or otherwise 'fail to conduct [themselves] in the manner prescribed' by law as acting 'in excess of jurisdiction.' " (*Id*. at pp. 339–340, italics omitted.)

Other statutory deadlines "affect a court's fundamental jurisdiction in the sense of entirely depriving the court of power to hear or determine the

11

case or authority over the subject matter." (*Mayor, supra,* 104 Cal.App.5th at p. 1306, review granted.) "Because a lack of fundamental jurisdiction implicates 'the basic power of a court to act,' courts must enforce jurisdictional limitations even if considerations of waiver, estoppel, consent, or forfeiture might otherwise excuse a party's failure to comply with them. [Citations.] In other words, when a party fails to comply with a jurisdictional time bar, the court has no choice but to dismiss the case for lack of jurisdiction, even if equitable concerns would support reaching the merits." (*Law Finance Group, LLC v. Key* (2023) 14 Cal.5th 932, 950 (*Law Finance*).)

Given the harsh consequence of a jurisdictional time bar, courts apply a presumption that statutes do not limit fundamental jurisdiction absent a clear indication of legislative intent. (*Law Finance, supra,* 14 Cal.5th at p. 950.) "This approach reflects ' "a preference for the resolution of litigation and the underlying conflicts on their merits by the judiciary." ' [Citations.] To be sure, mandatory procedural rules — like many statutes of limitations or other filing deadlines — serve important policy goals, and courts must enforce them when properly raised. [Citation.] But we will not assume that the Legislature intended to imbue a time bar with jurisdictional consequences merely because the statute speaks in mandatory terms; as we have said, 'jurisdictional rules are mandatory, but mandatory rules are not necessarily jurisdictional.' " (*Ibid.*)

Possible indicia that the Legislature intended to overcome the presumption that deadlines are not jurisdictional include whether the statute provides for " ' "a consequence or penalty . . . for failure to do the act within the time commanded" ' " (*Kabran, supra,* 2 Cal.5th at p. 343) and "whether the consequences of holding a time limitation mandatory or jurisdictional 'would defeat or promote the purpose of the enactment.' " (*Ibid.*) In *Kabran,*

12

the Supreme Court held that Code of Civil Procedure section 659 and former section 660, governing procedures for a motion for new trial, included "clear markers of legislative intent that their respective deadlines are jurisdictional." (*Kabran*, at p. 344.) These indicia included language in the statutory provision that if a motion for new trial " 'is not determined within said period of 60 days, . . . the effect shall be a denial of the motion without further order of the court' " and " '[t]he times specified . . . shall not be extended by order or stipulation.' " (*Ibid.*)

By contrast, in *Law Finance*, the Supreme Court concluded that the 100-day deadline in Code of Civil Procedure section 1288.2 for a party to file a request to vacate an arbitration award after service of the final award in response to a petition to confirm an award did not affect the court's fundamental jurisdiction and did not preclude equitable tolling. (*Law Finance*, *supra*, 14 Cal.5th at p. 941.) Our Supreme Court observed there was "nothing in [Code of Civil Procedure] section 1288.2's instructions for the timing of responses requesting vacatur clearly indicat[ing] the Legislature's intent to remove a class of cases from the court's fundamental jurisdiction." (*Id.* at p. 950.) Instead, the provision "speaks only to obligations of the litigants and makes no reference at all to the power of the courts" (*ibid.*), in contrast with the statutory deadline at issue in *Kabran*, which the court explained "sp[oke] directly to the trial court's power to act on an untimely motion." (*Id.* at p. 951.) The high court concluded that while the court may act in excess of jurisdiction by entertaining an untimely challenge to a petition to confirm an award (*ibid.*), "absent clearer evidence of legislative intent, we presume that the Legislature did not intend to limit the fundamental jurisdiction of the courts by enacting the 100-day deadline to

13

challenge an arbitral award under [Code of Civil Procedure] section 1288.2." (*Id.* at p. 952.)

2. *Shipley, Zurich, Mayor,* and Amendments to Former Section 5909

In *Shipley*, which predates both *Kabran* and *Law Finance*, the appellate court considered the language of former section 5909 in the context of the workers' compensation statutes to conclude that the time for acting on a petition for reconsideration may be adjusted under appropriate circumstances. *Shipley* reasoned that while the language of former section 5909 "appears mandatory and jurisdictional, the time periods must be based on a presumption that a claimant's file will be available to the board; any other result deprives a claimant of due process and the right to a review by the board." (*Shipley*, *supra*, 7 Cal.App.4th at p. 1107.) Because the applicant in *Shipley* made inquiries to the board about his file, which had been lost or misplaced, and "received reassurances from the board that his petition would be considered either after his file was found or after he reconstructed a duplicate file" (*id.* at p. 1108), the court determined that the former section 5909 "time period after which a petition for reconsideration is deemed denied by operation of law was tolled while the board misplaced [the applicant]'s file and led him to believe his petition would eventually receive consideration" (*id.* at p. 1107). The court cited "elementary due process" and "common sensibilities" as justification for entitling the applicant "to the board's review of his petition and its decision on its merits." (*Id.* at p. 1108.)

The Court of Appeal in *Zurich* disagreed with *Shipley*. It examined the language of former section 5909 under the principles for identifying a jurisdictional deadline articulated in *Law Finance*, *Kabran*, and other decisions of our Supreme Court. (*Zurich*, *supra*, 97 Cal.App.5th at pp. 1227–1230.) Comparing the statutory language at issue in *Law Finance* and that

14

in *Kabran*, the court observed that the deemed-denied language of former section 5909 is similar to the language of Code of Civil Procedure former section 660 that *Kabran* addressed, even in the absence of language explicitly directed to the court's power to rule on the motion at issue expiring beyond a set deadline. (*Zurich*, at p. 1228; see *Kabran*, *supra*, 2 Cal.5th at p. 343.)

The court in *Zurich* acknowledged Supreme Court precedent treating similar deemed-denied deadlines as affecting fundamental jurisdictional, or providing that an act outside the deadline is in excess of jurisdiction. (*Zurich*, *supra*, 97 Cal.App.5th at pp. 1228–1229; see *Bonnell v. Medical Board* (2003) 31 Cal.4th 1255, 1265 (*Bonnell*) [holding state agency's issuance of a 28-day stay "void for lack of jurisdiction"]; *id*. at p. 1260 [where statute provided for state agency to grant a stay on a filed petition " 'for no more than 10 days' " and stated, " 'If no action is taken on a petition within the time allowed for ordering reconsideration, the petition shall be deemed denied.' "]; see also *J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 652 (*J.M.*) [rejecting plaintiff's application to file late claim against school district where Government Claims Act provision provided that the application "is deemed denied on the 45th day after it was presented" if the public entity does not act on it, and minor's counsel failed to petition for relief within the time provided after a claim is "deemed denied"].)

The *Zurich* court cited the plain meaning and legislative history of former section 5909 as support for its interpretation of the statute. It reasoned that like the statutes in *Kabran* and *Bonnell*, the statutory language specifies a consequence for the failure of the Board to act within 60 days—that is, the petition is deemed denied. (*Zurich*, *supra*, 97 Cal.App.5th at p. 1231.) The court found the legislative history of former section 5909 supportive of its interpretation because the strict time limitation is consistent

15

with the legislative aims of the workers' compensation system "to achieve ' "average justice" ' that is 'speedily and inexpensively administered' instead of 'exact justice' that could consume too much time and leave the claimant in debt." (*Zurich*, at p. 1235, quoting Cal. Industrial Accident Com., Rep. of the Industrial Accident Com. of the State of Cal. for the Year 1913 and from January 1 to June 30, 1914 (1914) pp. 8–9.)

The court in *Zurich* also cited the structure of the statute and mechanism for judicial review pursuant to section 5950. The court reasoned that "[former] section[] 5909 and [section] 5950 work in tandem, providing certainty in section [former] 5909 as to when the deadline for seeking judicial review under section 5950 commences. Absent an interpretation of [former] section 5909 that construes the deemed-denied language to terminate the Board's jurisdiction after the passing of 60 days, an aggrieved party would not know when to file a petition for a writ of review—after the 60-day deadline under [former] section 5909 or months or years later when the Board acts on the petition." (*Zurich*, *supra*, 97 Cal.App.5th at p. 1235.) Like in *J.M.*, where the California Supreme Court explained "[b]y placing this limitation on the entity's time to act, the Legislature ensured that applications would not languish" (*J.M.*, *supra*, 2 Cal.5th at p. 653), the *Zurich* court reasoned that "[a] similar construction here is most consistent with the Constitutional directive for the workers' compensation system to accomplish substantial justice expeditiously and inexpensively." (*Zurich*, at p. 1235; see Cal. Const., art. XIV, § 4.)

Based on these authorities, the Court of Appeal concluded that the Board had acted in excess of its jurisdiction in purporting to grant the petition for reconsideration after it was deemed denied under former section 5909. (*Zurich*, *supra*, 97 Cal.App.5th at p. 1236.) The court expressly

16

declined to resolve whether the Board's failure to act on the petition for reconsideration within 60 days was not only in excess of its jurisdiction but also implicated its fundamental jurisdiction. It stated, "even if the Board retained fundamental jurisdiction but acted in excess of its jurisdiction by purporting to decide [the] petition after it was deemed denied under [former] section 5909, . . . equitable principles do not support the Board's position." (*Id.* at p. 1236, fn. 17.)

The *Zurich* court addressed whether the due process principles cited in *Shipley* required an exception to the 60-day deadline. (*Zurich*, *supra*, 97 Cal.App.5th at p. 1237.) The court disagreed that an applicant has a due process right to have the Board review a petition for reconsideration after the 60-day deadline, citing former "section 5909's clear language" providing that a petition for reconsideration is deemed denied within 60 days, if the Board has not acted on it, and affording judicial review under section 5950. (*Ibid.*) The court further decided that "even if *Shipley* is read to allow some form of equitable tolling to extend the deadline in [former] section 5909 (or section 5950) where a diligent petitioner is misled to believe the Board would review his or her petition and is therefore deprived of an administrative or judicial review, [it] reject[ed] the Board's position the deadline may be extended any time the Board fails to act due to deficiencies in the administrative process." (*Ibid.*) Rather, the *Zurich* court suggested that any exception to the 60-day deadline in former section 5909 must be limited to circumstances like those in *Shipley*, "where [the claimant] acts diligently to protect his or her rights and the Board misleads the petitioner into believing the Board would consider the petition after the 60-day deadline had passed, thereby depriving the claimant of review by the Board (and potentially any judicial review)." (*Zurich*, at p. 1238.)

17

The court concluded that the facts in *Zurich* were dissimilar from those of *Shipley* and did not support the application of an exception based on equitable principles. (*Zurich, supra*, 97 Cal.App.5th at pp. 1238–1239.) In contrast with *Shipley*, the petitioner in *Zurich* had not made inquiries prior to the 60-day deadline expiring and did not file a petition for writ of review under section 5950 within 45 days of the denial of its petition by operation of law. Rather, the insurer bringing the petition for reconsideration before the Board "took no action for nine months following the filing of its petition to inquire as to the status of its petition." (*Zurich*, at p. 1239.) The *Zurich* court rejected the Board's reliance on an exception to former section 5909 under the equitable principles articulated in *Shipley*. (*Id.* at p. 1240.)

*Mayor* involved similar circumstances, in that the Board had asserted it had not received the petition for reconsideration until well after 60 days postfiling and had cited *Shipley* for the proposition that the order on the petition would be considered timely if issued within 60 days of the Board receiving notice of the petition. (*Mayor, supra*, 104 Cal.App.5th at pp. 1301–1303, review granted.)

In *Mayor*, the WCJ issued an award of total permanent disability in favor of Mayor based on an industrial injury he suffered in the workplace, and the employer, Ross Valley Sanitation District (Ross Valley), petitioned the Board for reconsideration. (*Mayor, supra*, 104 Cal.App.5th at pp. 1301–1302, review granted.) At the time, former section 5909 provided that a petition for reconsideration is deemed denied unless the Board acts on it within 60 days from the date of filing. (*Mayor*, at p. 1302.) Ross Valley wrote to the Board 74 days after the filing of its petition for reconsideration to inquire about its status, and Mayor thereafter requested a hearing to enforce the WCJ's award. (*Ibid.*) The Board issued a decision 144 days after the

18

filing of the petition for reconsideration in which it granted reconsideration, noted it had first received notice of the petition only about a month prior, and cited *Shipley* as support for deeming the order timely under the circumstances. (*Ibid*.) Shortly after Mayor filed his petition for writ of mandate in the Court of Appeal challenging the Board's order on the ground that it had lost jurisdiction over the matter 60 days after Ross Valley filed for reconsideration, the Board issued a revised decision in which it stated that it was rescinding the WCJ's award and returning the matter to the trial level for further proceedings. (*Id*. at pp. 1302–1303.) Mayor sought a writ of mandate directing the Board to rescind its order granting Ross Valley's petition for reconsideration of the award of permanent disability.

While the appeal in *Mayor* was pending, the Legislature amended former section 5909 by enacting Assembly Bill No. 171 (2023–2024 Reg. Sess.) (Assembly Bill 171) (Stats. 2024, ch. 52, § 27).[6] (*Mayor, supra*, 104 Cal.App.5th at p. 1303, review granted.) The *Mayor* court agreed with the reasoning of *Zurich*, found that the recent statutory "amendment at once implicitly confirms *Zurich*'s interpretation of the former statute and puts to rest the Board's concerns about the consequences of that interpretation for

---

[6] As summarized by *Mayor*, "Section 5909 now states, '(a) A petition for reconsideration is deemed to have been denied by the appeals board unless it is acted upon within 60 days from the date a trial judge transmits a case to the appeals board. [¶] (b)(1) When a trial judge transmits a case to the appeals board, the trial judge shall provide notice to the parties of the case and the appeals board. [¶] (2) For purposes of paragraph (1), service of the accompanying report, pursuant to subdivision (b) of [s]ection 5900, shall constitute providing notice. [¶] (c) This section shall remain in effect only until July 1, 2026, and as of that date is repealed.' The former version of section 5909 is currently set to be reinstated on July 1, 2026. (Stats. 2024, ch. 52, § 28.)" (*Mayor, supra*, 104 Cal.App.5th at pp. 1303–1304, review granted.)

the future," (*id.* at p. 1301) and issued a writ of mandate overturning the Board's order on the petition for reconsideration as an act in excess of its jurisdiction. (*Id.* at pp. 1309, 1311–1313, 1316.)

*Mayor* concluded that the Legislature's enactment of Assembly Bill 171—which took place about six months after the decision in *Zurich*—indicated a legislative response to *Zurich*.[7] (*Mayor, supra,* 104 Cal.App.5th at p. 1312, review granted.) *Mayor* noted that in this instance, the Legislature did not attempt to clarify the existing meaning of former section 5909 (cf. *McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 473 [explaining the Legislature's attempt to clarify meaning of preexisting law is not definitive]) but actually "changed the trigger for the running of the 60-day deadline to have it run from the WCJ's transmission of the case file to the Board." (*Mayor,* at p. 1312.) As interpreted by *Mayor,* this decision signified "a tacit acquiescence to *Zurich*'s interpretation of former section 5909's rule as mandatory, since if the deadline was not mandatory and the Board's practice was permissible there would have been no reason to alter the deadline." (*Ibid.*)

*Mayor* noted that the legislative findings set forth in Assembly Bill 171 referenced challenges for the enforcement of labor laws created by staffing

---

[7] *Mayor* further noted, in response to a petition for rehearing suggesting that the changes to former section 5909 were recommended before *Zurich,* that even if the Legislature did not specifically intend to respond to *Zurich,* it did intend to respond to the workload problems identified by the Board and furthermore did so while expressing no disagreement with *Zurich.* (*Mayor, supra,* 104 Cal.App.5th at p. 1314, fn. 8, review granted; see *Blankenship v. Allstate Ins. Co.* (2010) 186 Cal.App.4th 87, 96 [" 'When a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the legislature is aware of the judicial construction and approves of it.' "].)

emergencies at the Department of Industrial Relations, which "could not 'immediately and adequately be addressed through standard civil service recruitment practices.' (Stats. 2024, ch. 52, § 1.)" (*Mayor*, *supra*, 104 Cal.App.5th at p. 1312, review granted.)  Given the Board's position in *Zurich* and other cases citing the need for additional resources to adequately respond to petitions for reconsideration, *Mayor* concluded that "[t]he Legislature's choice to make its change to section 5909 temporary and have it expire on July 1, 2026, corroborates this view of the amendment as a short-term fix to the Board's need for resources to meet former section 5909's deadline, not a repudiation of *Zurich*'s interpretation of the nature of that deadline." (*Ibid*.)

*Mayor* also looked to the committee and floor analyses of Assembly Bill 171 as further confirmation of its statutory interpretation.  (*Mayor*, *supra*, 104 Cal.App.5th at p. 1313, review granted.)  It explained that, for future cases, basing the new deadline on the WCJ's transmission of a case to the appeals board "gives the Board the additional time to act . . . that it says it needs to resolve normal human errors or administrative irregularities." (*Ibid*.)  The court suggested that while the changes under Assembly Bill 171 expire in July 2026, "the Legislature's prompt response to the Board's concerns should reassure the Board that the Legislature will continue to monitor the issue and address it again if it persists."  (*Id*. at pp. 1313–1314.)

*Mayor* addressed the Board's argument that *Zurich* was not inconsistent with *Shipley* and could be cited as support for applying equitable considerations to excuse a grant of a petition for reconsideration after the 60-day cutoff.  (*Mayor*, *supra*, 104 Cal.App.5th at p. 1310, review granted.)  *Mayor* recognized that *Zurich* did not resolve whether a violation of former section 5909 implicated the fundamental jurisdiction of the appeals board, or merely was in excess of the Board's jurisdiction, and that *Zurich* "assumed

that *Shipley* correctly decided that equitable considerations could avoid the running of the former section 5909 deadline." (*Ibid.*)

Even so, *Mayor* emphasized that *Zurich* disagreed with *Shipley*'s reliance on due process as providing a right of review even after the 60-day period has expired and further rejected the Board's position that an exception under *Shipley* could apply to extend the deadline any time the Board failed to act due to a deficiency in the administrative process. (*Mayor, supra*, 104 Cal.App.5th at p. 1311, review granted.) *Mayor* concluded that the facts before it, like in *Zurich*, did not support the narrow application of an exception under *Shipley*, noting "there is no suggestion that the Board here misled Ross Valley into disregarding the deadline for judicial review." (*Ibid.*)

Regarding the Board's argument that it would violate due process for a litigant's petition for reconsideration to be denied without the Board even considering it (especially when the scope of judicial review under section 5950 is more limited than the complete reconsideration the Board can provide), *Mayor* pointed out the countervailing concerns (not addressed in *Shipley*) "that the workers' compensation system is intended to provide substantial justice quickly and expeditiously, not duplicate the formality of the courts" (*Mayor, supra*, 104 Cal.App.5th at p. 1314, review granted) and that the opposing party in a workers' compensation proceeding also has an interest in avoiding protracted proceedings (*id.* at p. 1315). *Mayor* also rejected the Board's argument based on its longtime reliance on *Shipley*, noting that " 'a long-standing and incorrect procedure remains incorrect.' " (*Ibid.*, quoting *Earley v. Workers' Comp. Appeals Bd.* (2023) 94 Cal.App.5th 1, 11 (*Earley*).)

### C. Analysis

We decline the Board's invitation to stay our consideration of this appeal until the Supreme Court completes its review in *Mayor*. To suspend

indefinitely the resolution of Miraco's workers' compensation claim would run contrary to the purpose behind the restrictive statutory deadlines for Board action on a petition for reconsideration (§ 5909) and on a party's time-limited right to judicial review (§ 5950). (See *Zurich*, *supra*, 97 Cal.App.5th at p. 1235 [citing the California Supreme Court's construction of the limitation on a public entity's time to act (in a different statutory context) as intended to " 'ensure[] that applications would not languish' "]; Cal. Const., art. XIV, § 4 [expressing among the purposes of the workers' compensation system and administrative body to "accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character"].)

Turning to petitioners' substantive contentions, we largely agree with their criticisms of the Board's broad reliance on *Shipley* to extend the 60-day period set out in former section 5909. The principles distinguishing mandatory and directory deadlines, considered together with the language of former section 5909 and the structure and history of legislation establishing the workers' compensation system, support the conclusion articulated by the Court of Appeal in *Zurich* and adopted in *Mayor*. For the reasons stated in those opinions, we agree that the "deemed denied" language of former section 5909 is mandatory, rendering—absent an exception—a decision outside the 60-day statutory deadline in excess of the Board's jurisdiction to act.[8] (*Zurich*, *supra*, 97 Cal.App.5th at p. 1231; *Mayor*, *supra*, 104 Cal.App.5th at p. 1302, review granted.)

---

[8] We do not purport to express an opinion on the distinct issue (not before us) mentioned briefly in *Zurich*, *supra*, 97 Cal.App.5th at page 1230 and addressed in *Earley*, *supra*, 94 Cal.App.5th at page 11, regarding whether the Board is required to issue a final ruling on the merits within 60 days.

However, neither *Zurich* nor *Mayor* decided whether the Board's failure to act on a petition for reconsideration within 60 days meant only that it acted in excess of its jurisdiction, or whether it lost fundamental jurisdiction to consider the petition. Instead, both decisions recognized that, even if the expiration of the 60-day deadline did not affect the Board's fundamental jurisdiction, the circumstances of those cases did not support the application of equitable tolling. (*Zurich*, *supra*, 97 Cal.App.5th at p. 1236, fn. 17; *Mayor*, *supra*, 104 Cal.App.5th at pp. 1310–1311, review granted.)

Respondents rely on this ambiguity to assert that the Board's conduct in this case is not inconsistent with *Zurich* and *Mayor*, both of which appear to recognize the possibility that equitable tolling might apply under former section 5909 in appropriate circumstances. Having carefully considered our Supreme Court's articulation of the standards and principles governing the determination of jurisdictional deadlines, we agree. We decide that nothing in the language, statutory structure, or legislative history of former section 5909 suggests that, by mandating the consequence that a petition for reconsideration be "deemed denied" if the Board has not acted on it within the 60-day period, the Legislature intended to deprive the Board of fundamental jurisdiction over the matter. (See *Kabran*, *supra*, 2 Cal.5th at p. 341; *Law Finance*, *supra*, 14 Cal.5th at p. 950.)

The consequence imposed by former section 5909 (a deemed denial of the petition for reconsideration) restricts the window for the Board to respond to a petition for reconsideration and requires prompt action by a litigant wishing to seek judicial review of the Board's action or denial (§ 5950) but lacks express effect *depriving* the appeals board of its power to act after that time. (See *Law Finance*, *supra*, 14 Cal.5th at p. 951.) This silence distinguishes former section 5909 from Code of Civil Procedure section 660,

24

examined in *Kabran*, where our high court observed the statute explicitly removed from the court its power to rule on a motion for new trial after a stated time. (*Kabran*, *supra*, 2 Cal.5th at p. 344.)

Absent clearer evidence of legislative intent to limit the fundamental jurisdiction of the Board after 60 days have expired, we assume that the Board's decision to grant Miraco's petition for reconsideration outside the deadline was an act "in excess" of its jurisdiction, but not one falling outside of its fundamental jurisdiction.[9] (*Law Finance*, *supra*, 14 Cal.5th at p. 952.)

A procedural deadline that is mandatory but does not clearly limit the fundamental authority of the court (or here, the Board) over the subject matter or the parties may remain subject to judiciously applied equitable exceptions if the court retains fundamental jurisdiction. (*Zurich*, *supra*, 97 Cal.App.5th at p. 1237.)

---

[9] Petitioners cite *Bonnell* as support for a contrary analytical approach that would assume the unambiguous 60-day deadline forecloses the Board from retaining fundamental jurisdiction. The California Supreme Court's holding in *Bonnell* appears to treat the statutory deadline for the length of time a state administrative agency can stay its decision in order to review a petition for reconsideration once the petition has been filed (Gov. Code, § 11521, subd. (a)) as a matter of fundamental jurisdiction to act, calling the agency's decision outside of that period "void for lack of jurisdiction." (*Bonnell*, *supra*, 31 Cal.4th at p. 1265.) However, there is no indication that the nature of the jurisdictional effect was raised in *Bonnell*, nor did the court address the subject of the presumption—later examined in *Kabran* and *Law Finance*—that statutes do not limit courts' fundamental jurisdiction absent a clear indication of legislative intent. (*Law Finance*, *supra*, 14 Cal.5th at pp. 949–950.) Because cases are not authority for propositions not considered (*Howard Jarvis Taxpayers Assn. v. Newsom* (2019) 39 Cal.App.5th 158, 169), we decline to interpret the Supreme Court's analytical approach in *Bonnell* as authority for assuming that former section 5909's "deemed denied" consequence speaks to the fundamental jurisdiction of the Board.

The doctrine of equitable tolling is typically applied in the statute of limitations context to " 'suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness' " (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 99.) It "applies 'occasionally and in special situations' to 'soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court.' " (*Saint Francis Memorial Hospital v. State Department of Public Health* (2020) 9 Cal.5th 710, 719 (*Saint Francis*).)

Because courts' authority to toll a filing deadline derives "from their inherent equitable powers — not from what the Legislature has declared in any particular statute" (*Saint Francis*, *supra*, 9 Cal.5th at p. 720), "we presume that statutory deadlines are subject to equitable tolling." (*Ibid*.) On the other hand, where an examination of the statutory language or underlying policy demonstrates a legislative intent to preclude courts from providing equitable relief from the statutory deadline, tolling is not permitted. (*Law Finance*, *supra*, 14 Cal.5th at p. 953.)

We discern no express prohibition in the statutory language of former section 5909 that would preclude, as a matter of law, the application of traditional equitable doctrines like tolling. (*Law Finance*, *supra*, 14 Cal.5th at p. 952 [tolling derives from the inherent equitable powers of the court, not from a legislative delegation of authority].) A recent significant panel decision of the appeals board adheres to this interpretation of former section 5909, tolling the deadline to act on a timely petition for reconsideration when the Board has not received the petition within 60 days due to irregularities outside the petitioner's control. (*Ja'Chim Scheuing (Sandra) v. Lawrence Livermore National Laboratory* (2024) 89 Cal. Comp. Cases 325, 330.) The interpretation of the appeals board, though not binding or controlling on this

26

court, is generally entitled to great weight unless clearly erroneous. (*Genlyte*, *supra*, 158 Cal.App.4th at p. 714; see also *Land v. Workers' Comp. Appeals Bd.* (2002) 102 Cal.App.4th 491, 495, fn. 2.) Because the consequence set forth in former section 5909 for the Board's failure to act on a timely filed petition for reconsideration within 60 days is not "clear and unambiguous" as to the Board's fundamental inability to act after that point, we give due consideration to the Board's interpretation on the issue of tolling in appropriate circumstances. (Cf. *Department of Corrections*, *supra*, 27 Cal.App.5th at p. 617.)

Our conclusion that the appeals board retains the authority to exercise equitable powers where appropriate, and in the absence of legislative direction to the contrary, is consistent with the judicial powers vested in it. (§ 111; see, e.g., *Truck Ins. Exchange v. Workers' Comp. Appeals Bd.* (2016) 2 Cal.App.5th 394, 401 (*Truck Ins.*) ["The appeals board has broad equitable powers with respect to matters within its jurisdiction."]; *Mayor*, *supra*, 104 Cal.App.5th at p. 1304, review granted ["The Board is a court of limited jurisdiction authorized by the California Constitution to exercise a portion of the state's judicial power."].)

Petitioners argue that the application of such "broad equitable powers" (*Truck Ins.*, *supra*, 2 Cal.App.5th at p. 401) should not extend to equitable tolling. Petitioners maintain that the Board's application of equitable tolling contravenes the 60-day adjudication deadline and harms litigants, including injured workers, who "must wait numerous months or years to receive a decision on reconsideration petitions." Petitioners point out that even in the absence of an explicit statutory prohibition, the "manifest policy underlying a statute" may preclude equitable tolling. (*Saint Francis*, *supra*, 9 Cal.5th at p. 720.) They assert that the policy behind the 60-day adjudication deadline

27

is to expedite the resolution of reconsideration petitions, consistent with the constitutional mandate to decide workers' compensation cases expeditiously.

We are not persuaded. The "manifest policy" underlying the workers' compensation scheme is not limited to the expeditious resolution of workers' compensation cases. The goal as articulated by the California Constitution is to establish "[a] complete system of workers' compensation" that includes the vesting of "power, authority and jurisdiction in an administrative body with all the requisite governmental functions to determine any dispute or matter arising under such legislation, *to the end that the administration of such legislation shall accomplish substantial justice* in all cases *expeditiously*, inexpensively, and without incumbrance of any character." (Cal. Const., art. XIV, § 4, italics added.) Narrowly construed equitable doctrines help accomplish both expeditious resolution *and* substantial justice.

The July 2, 2024 amendment to former section 5909 does not undercut our conclusion that equitable tolling may be applied in appropriate circumstances. The enactment of Assembly Bill 171 changed the starting point for the running of the 60-day deadline from the filing of the petition for reconsideration in the district office to the WCJ's transmission of the case file to the Board. (§ 5909; Stats. 2024, ch. 52, § 27.) The Court of Appeal in *Mayor* interpreted this change as tacit affirmation of the mandatory nature of former section 5909 as interpreted in *Zurich*, "since if the deadline was not mandatory and the Board's practice was permissible there would have been no reason to alter the deadline." (*Mayor*, *supra*, 104 Cal.App.5th at p. 1312, review granted.)

We agree with *Mayor* insofar as these legislative changes, which remain operative until July 1, 2026, are reasonably viewed as confirmatory of the mandatory effect of the "deemed denied" consequence of a nondecision by

the Board within the specified timeframe. At the same time, by aligning the start of the 60-day period with the *transmission* of the case file by the WCJ to the appeals board, the Legislature has—in practical effect—achieved the very change the Board has historically sought by tolling former section 5909's 60-day timeline until the case file is received from the district office.

Thus, while it appears the Legislature intended to forestall any need for equitable tolling by supplying at least a temporary fix for the delay between a petitioner's filing for reconsideration and transmission of the file to the appeals board, the changes also suggest an intent to avoid the denial of petitions by operation of law before the case file even reaches the Board. (*Mayor*, *supra*, 104 Cal.App.5th at p. 1313, review granted [explaining that "committee and floor analyses of Assembly Bill 171's effects on former section 5909 confirm that the Legislature understood it was making substantive modifications to the law to avoid *Zurich*'s effects, not disagreeing with *Zurich*'s analysis"].) Further, the amended statute does not expressly preclude equitable remedies, leaving open to continued judicial interpretation the question of former section 5909's 60-day deadline's effect on the Board's fundamental jurisdiction. (See *Law Finance*, *supra*, 14 Cal.5th at p. 953.)

We recognize that, in fulfillment of the constitutional policy of expeditious administration of the workers' compensation scheme (Cal. Const., art. XIV, § 4), any equitable exceptions to the timeline implicitly set out by former section 5909 must be narrowly construed. (*Zurich*, *supra*, 97 Cal.App.5th at p. 1221.) Indeed, "equitable tolling is a narrow remedy that applies . . . only 'occasionally and in special situations.' " (*Saint Francis*, *supra*, 9 Cal.5th at p. 724.) As our Supreme Court has explained, "[T]he doctrine allows our courts, 'in carefully considered situations' [citation] to

29

exercise their inherent equitable powers to 'soften the harsh impact of technical rules.' " (*Ibid.*)

Our high court has instructed courts to look to three " 'elements' " in deciding whether equitable tolling applies. (*Saint Francis*, *supra*, 9 Cal.5th at p. 724.) These elements are timely notice, lack of prejudice to the defendant, and reasonable and good faith conduct by the plaintiff. (*Ibid.*; see also *Addison v. State of California* (1978) 21 Cal.3d 313, 319 (*Addison*).)

We apply these factors to the Board's decision to equitably toll section 5909 to the period between Miraco's filing of the petition for reconsideration and the Board's receipt of the file transmission from the district office. Our review of the Board's exercise of its equitable powers under the circumstances " 'is limited to determining whether the Board acted "without or in excess of its powers" and whether its decision was unreasonable, not supported by substantial evidence, or procured by fraud.' " (*Mayor*, *supra*, 104 Cal.App.5th at p. 1305, review granted; § 5952.)

As to the first element of timely notice, "courts focus on whether the party's actions caused the defendant to be 'fully notified within the [statute of limitations] of plaintiffs' claims and their intent to litigate.' " (*Saint Francis*, *supra*, 9 Cal.5th at p. 726.) Petitioners assert there is nothing in the record to suggest that the City and Corvel had notice that the Board would extend its adjudication deadline after the 60-day deadline had already expired due to denial by operation of law.

This argument misconstrues the purpose of the timely notice prong of equitable tolling, the focus of which is making the defendant aware of the claims and the plaintiff's intent to litigate. (*Saint Francis*, *supra*, 9 Cal.5th at p. 726.) Here, petitioners indisputably received the timely filed petition for reconsideration and understood Miraco's claims and intent to litigate the

30

reconsideration petition. Petitioners filed their responses and were aware of the pending decision by the Board and relevant statutory deadlines on the reconsideration petition. These facts are sufficient to satisfy timely notice.

As to the possibility that the Board would exercise equitable authority to issue a decision after the expiration of the 60-deadline, the parties acknowledge that practitioners in the area of workers' compensation law have operated with an understanding since *Shipley* that the Board could potentially "toll" the period to decide a reconsideration petition if, by no fault of the parties, it was not in receipt of the petition as of the 60-day deadline. During oral argument, counsel for petitioners acknowledged that *Shipley* has long governed the Board's practice for this purpose. We conclude that Miraco timely notified petitioners of his intent to seek reconsideration of the WCJ's award and order and petitioners were on notice of the Board's longstanding adherence to Shipley.

Turning to the second element—lack of prejudice—petitioners assert they were prejudiced by their inability to challenge the hearsay statements invoked by Miraco in conveying reliance on his counsel's assistant's telephone communication with the Board of its intent to reset the deadline upon receipt of the reconsideration petition. Petitioners maintain that allowing Miraco to obtain reversal of a denial made final by operation of law on this basis would abrogate and undermine the rule of appellate practice requiring a complete record (where evidence of the conversation is not in the record) and violate the City's right to fully litigate and challenge the factual basis for the ruling.

Petitioners' arguments miss the mark. Their inability to factually challenge Miraco's counsel's representation about the January 12, 2024 telephone conversation does not go to the merits of petitioners' defense to the reconsideration petition. Any asserted prejudice from the delay itself and

31

associated costs—as indicated by petitioners' counsel at oral argument—is not the type of prejudice contemplated by courts in evaluating application of equitable tolling.

The "core focus of our prejudice analysis" is "whether application of equitable tolling would prevent the defendant from defending a claim on the merits." (*Saint Francis*, *supra*, 9 Cal.5th at p. 728; see also *Addison*, *supra*, 21 Cal.3d at p. 318 [deciding the "defendant can claim no substantial prejudice, having received timely notice of possible . . . liability upon filing of the compensation claim, and having ample opportunity to gather defense evidence in the event a court action ultimately is filed"].) Petitioners do not articulate any prejudice based on the Board's tolling of the reconsideration deadline to their ability to defend on the merits the findings of the WCJ against the reconsideration petition. We conclude that respondents have satisfied the second element of equitable tolling.

Lastly, petitioners contend respondent Miraco's conduct was objectively unreasonable given that the decision in *Zurich* (decided on December 18, 2023) was issued only three days after expiration of the decisional deadline in this case. According to petitioners, this left Miraco 42 days to seek review in this court of the denial by operation of law pursuant to section 5950, which he failed to do. They assert that the decision not to seek writ of review and instead continue relying on *Shipley* was objectively unreasonable given *Zurich*'s rejection of *Shipley*.

The Board counters that *Zurich* does not clearly repudiate *Shipley* but confirms the nonjurisdictional nature of the 60-day deadline. Miraco further argues that under these circumstances, where the failure to transmit the file was of no fault of respondents, his counsel's actions in contacting the Board after passage of the 60 days to inquire about the reconsideration petition and

relying on the Board's assurances that it would reset the timeline for deciding the reconsideration was objectively reasonable.[10]  Miraco asserts that had the Board informed counsel in the phone call that the reconsideration petition had been denied by operation of law, Miraco "would have immediately sought relief from this [c]ourt."  He submits that he acted in good faith in relying on the information provided by the Board.

In construing the third element of equitable tolling, courts must consider "two distinct requirements" – objective reasonableness and subjective good faith.  (*Saint Francis*, *supra*, 9 Cal.5th at p. 729.)  We determine reasonableness based "not on a party's intentions or the motives behind a party's actions, but instead on whether that party's actions were fair, proper, and sensible in light of the circumstances."  (*Ibid*.)  By contrast, "[g]ood faith pivots instead on a party's intentions."  (*Ibid*.)  We decide both requirements are met here.

Miraco timely filed a petition for reconsideration of the WCJ's findings and order barring the hypertensive cardiac disease portion of his workers' compensation claim.  Although the WCJ filed and served her report and

---

[10] Petitioners do not dispute that the Board, for reasons not clear from the record, received transmission of the petition for reconsideration on January 12, 2024, approximately 29 days outside of the 60-day window, based on the October 16, 2023 filing date.  According to Miraco's verified answer to the petition for writ review, the transmission to the Board was likely prompted by a telephone inquiry on that date by Miraco's counsel's assistant, who contacted the Board to obtain a status update on the petition for reconsideration and was informed that the Board had not received the file, would contact the district office to obtain it, and that a new timeframe for a decision would apply once the Board received the file.  The Board issued its decision granting the reconsideration request on March 12, 2024—within the 60-day deadline, assuming the validity of the extension exercised by the Board.

recommendation on November 7, 2023, the matter was not transmitted to the Board until more than two months later, on January 12, 2024, apparently following the inquiry made by Miraco's attorney's assistant to the appeals board unit regarding the petition. The parties do not dispute these dates.

Although Miraco's inquiry to the Board occurred outside the 60-day deadline, the facts of this case do not reflect the extended inaction and apparent lack of diligence that marked the petition for reconsideration in *Zurich*, where the party seeking reconsideration "took no action for nine months following the filing of its petition to inquire as to the status of its petition." (*Zurich*, *supra*, 97 Cal.App.5th at p. 1239.) While issuance of the *Zurich* decision might have reasonably prompted Miraco's counsel to seek review in this court within 45 days of the deemed-denial, it was not objectively unreasonable for counsel to rely on the general understanding that the Board continued to follow *Shipley* and reset the 60-day clock upon transmission of the file and await the merits decision.[11] Nor does the record reveal any subjective intent by Miraco or his counsel (or the Board, for that matter) in so doing to act other than in good faith.

We decide these facts warrant application of the limited exception recognized in *Zurich* in which "a petitioner acts diligently to protect his or her rights and the Board misleads the petitioner into believing the Board would consider the petition after the 60-day deadline had passed." (*Zurich*, *supra*, 97 Cal.App.5th at p. 1238.) We conclude the Board did not err in its conclusion that Miraco has established the elements of equitable tolling.

---

[11] Indeed, in this court the Board continues to argue for the vitality of the *Shipley* rule, further underscoring Miraco's reasonable reliance on the Board's interpretation of equitable tolling.

34

In deciding the elements of equitable tolling have been satisfied here, we do not endorse the broad reading of *Shipley* advanced by the Board.  We agree with the thrust of the decisions in *Zurich* and *Mayor* that the Board's systemic reliance on *Shipley* violates the principle that equitable tolling must be the exception, not the rule.  As our Supreme Court has cautioned, "the conclusion that the Legislature hasn't prohibited a statute of limitations from being tolled ought not transform equitable tolling into 'a cure-all for an entirely common state of affairs.' " (*Saint Francis*, *supra*, 9 Cal.5th at p. 724.)

Nevertheless, we are persuaded that, on these facts, Miraco has established the three elements necessary for equitable tolling of the 60-day period in former section 5909.  We conclude that the application of equitable tolling in this instance represents "the kind of narrowly drawn flexibility for unusual situations" (*Saint Francis*, *supra*, 9 Cal.5th at p. 721) that may appropriately be applied when "warranted under the facts presented, with careful consideration of the policies underlying the doctrine."  (*Id*. at p. 730.)

Although the Legislature has since addressed the effects of this administrative irregularity by statutory amendment, the refusal to permit an equitable exception in this case would result in an injustice to Miraco and contravene the legislative directive to liberally construe these statutory provisions "with the purpose of extending their benefits for the protection of persons injured in the course of their employment."  (§ 3202.)

### III.  DISPOSITION

The March 12, 2024 opinion and order of the Workers' Compensation Appeals Board is affirmed.  Respondents shall recover their costs in this original proceeding.  (Cal. Rules of Court, rule 8.493(a)(1)(A).)

35

_____
Danner, Acting P. J.

WE CONCUR:

_____
Lie, J.

_____
Wilson, J.

**H052062**
***City of Salinas et al. v. Workers' Compensation Appeals Board et al.***

Yrulegui & Roberts, Stephen Roberts; Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, Robert Cooper and Gary S. Pancer for Petitioners.

Allison J. Fairchild and Eric D. Ledger for Respondent Workers' Compensation Appeals Board.

Dilles Law Group, PC, Nicholas J. Dilles for Respondent Lance Miraco.

**H052062**
*City of Salinas et al. v. Workers' Compensation Appeals Board et al.*